DOBRAN ET AL., APPELLEES, *v.* FRANCISCAN MEDICAL CENTER ET AL.; DAYTON CLINICAL ONCOLOGY PROGRAM, APPELLANT.

[Cite as *Dobran v. Franciscan Med. Ctr.,*
102 Ohio St.3d 54, 2004-Ohio-1883.]

(No. 2002–1994—Submitted October 22, 2003, at the Clinton County Session—Decided April 28, 2004.)

---

O'CONNOR, J.

{¶1} We are asked to consider whether a fear of metastasis of cancer can be the basis for a claim for negligent infliction of emotional distress. For the reasons that follow, we answer the question in the negative.

I

{¶2} In April 1998, appellee John J. Dobran had a mole excised from his left forearm. The mole was biopsied and found to be a malignant melanoma. After consulting with several physicians, Dobran decided to have a sentinel lymph node biopsy performed to determine whether his melanoma had metastasized. The sentinel lymph nodes are the first lymph nodes in the body to be encountered by metastasized melanoma. An individual node can be harvested for determination of the prospects of metastasis. The procedure involves injecting a radionucleotide and a dye at the site of the melanoma excision. The migration of the radionucleotide and dye identifies the sentinel lymph nodes, if any. The sentinel lymph nodes are then removed and tested.

{¶3} The procedure revealed that Dobran had two sentinel lymph nodes immediately downstream of the cancer site. The nodes were removed and divided, with one part of each node to be tested in Dayton with traditional histology, which involves examination under a microscope. Most patients' testing would end here. But after discussing a particular clinical study with his physician, Dr. Finley, Dobran decided to send the other samples of his sentinel lymph nodes to California for Polymerase Chain Reaction ("PCR") screening and possible submission in the Sunbelt Melanoma Trial.

{¶4} The Sunbelt Melanoma Trial investigates the value of lymphatic mapping and sentinel lymph node biopsies performed to detect early lymph node metastases. For those patients who qualify, the trial also evaluates the effectiveness of interferon alfa–2b, a drug for patients with metastasized melanoma.

{¶5} Dobran's sentinel lymph node dissection was performed at the Franciscan Medical Center in Dayton. The samples of his lymph nodes that were tested using traditional histology tested negative for metastasis. The others were frozen and shipped to the National Genetics Institute in California for PCR screening. Those samples had thawed before their arrival in California, rendering them unusable for PCR screening or other testing.

{¶6} Dobran and his wife brought suit against the National Genetics Institute, the Franciscan Medical Center, Dr. Finley, and the Dayton Clinical Oncology Program ("DCOP"). They claimed (a) breach of a bailment contract, (2) negligence, and (3) breach of fiduciary duties. Dobran argues that the PCR screening results would have defined the probability of metastasis and his life expectancy,

and that his quality of life is negatively affected by the extreme emotional distress caused by the uncertainty surrounding a recurrence of cancer.

{¶ 7} The trial court granted defendants' joint motion for summary judgment. The court reasoned that because Dobran had never been diagnosed with metastatic cancer he is not faced with an actual physical peril, which is a required element to prove causation for a claim of negligent infliction of emotional distress.

{¶ 8} The appellate court reversed, finding that the actual physical peril suffered by Dobran is the lost opportunity of an early diagnosis. The court recognized that although proving damages might be difficult, Dobran's chance of survival has value, and defendants should be liable for that lost chance.[1]

{¶ 9} The cause is now before this court pursuant to acceptance of the Dayton Clinical Oncology Program's discretionary appeal.

## II

{¶ 10} In *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, we first recognized that "[a] cause of action may be stated for the negligent infliction of serious emotional distress without a contemporaneous physical injury." Id. at syllabus. In *Schultz*, a sheet of glass fell off a truck and smashed into Schultz's windshield. Schultz was not physically injured, but nevertheless suffered serious emotional distress as a result of the accident. We reinforced this concept in *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, by holding that an actionable claim for negligent infliction of emotional distress was stated when a mother alleged severe psychological harm due to three separate incidents in which a car crashed into her house or yard, causing her to fear for the lives of her children.

{¶ 11} Most recently we considered this issue in *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 652 N.E.2d 664. Patricia Heiner was incorrectly and repeatedly informed by health professionals that she had tested positive for HIV. After later discovering that she was in fact HIV negative, Heiner brought suit against her physician, Akron General Medical Center, and the American Red Cross. She

---

1. The appellate court is responsible for introduction and misapplication of the "loss of chance" doctrine to this litigation. Neither of the parties argued this issue before the lower courts or this court. Indeed, the "loss of chance" doctrine, adopted by this court in *Roberts v. Ohio Permanente Med. Group, Inc.* (1996), 76 Ohio St.3d 483, 668 N.E.2d 480, is inapplicable to the case at bar. *Roberts* contemplates those plaintiffs who had a "less-than-even chance of recovery or survival" that was diminished even further by the defendant's negligence. Id. at paragraph one of the syllabus. Dobran has not been diagnosed with metastatic cancer, and consequently cannot claim that his chance of survival is less than 50 percent. Accordingly, we will not address the matter further in this opinion.

alleged that the false diagnosis was a result of the defendants' negligence, and sought recovery for negligent infliction of emotional distress. The trial court granted summary judgment for the defendants and dismissed her claims, holding that Ohio does not recognize a right to recovery for negligent infliction of emotional distress where the distress is caused by fear of a nonexistent peril. The appellate court affirmed. This court accepted jurisdiction of the discretionary appeal, and examined in detail the history of the tort of negligent infliction of emotional distress in Ohio.

{¶ 12} We distinguished the facts in *Heiner* from those in *Paugh* and *Schultz* because the plaintiff in *Heiner* "neither witnessed nor was exposed to any real or impending physical calamity." *Heiner,* 73 Ohio St.3d at 85, 652 N.E.2d 664. "[T]he claimed negligent diagnosis never placed appellant or any other person in real physical peril, since appellant was, in fact, HIV negative." Id. We concluded that "Ohio does not recognize a claim for negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a nonexistent physical peril." Id. at syllabus.

{¶ 13} DCOP argues that this case is analogous to *Heiner* because Mr. Dobran "has never faced an actual physical peril as a result of [DCOP's] alleged negligence. Dobran was not diagnosed with cancer after the loss of his sentinel lymph node. Neither will the loss of the sentinel lymph node cause Dobran to get cancer. * * * Mr. Dobran is simply afraid that his previously diagnosed cancer *may* reoccur." (Emphasis sic.) Dobran counters that his malignant lesion carries a *"significant risk* for proliferation" and that "[i]f there was no actual risk of physical peril, there would be no reason" to conduct research for therapy related to such a metastatic disease. (Emphasis sic.)

{¶ 14} Dobran emphasizes that Dr. Finley testified that sentinel lymph node biopsy and PCR screening were advisable. The loss of half of Dobran's sentinel lymph node samples does not alter the fact that the other half was tested with traditional histology and that metastatic cancer was not found. PCR screening of a sentinel lymph node had not yet become the standard of care for patients with melanoma. The current standard of care—traditional histology—was met. The histology results sufficiently eliminate any actual physical peril and the advisability or need of further treatment.

{¶ 15} Dobran further attempts to distinguish his claim from that in *Heiner* by aligning himself with plaintiffs who have wrongfully been exposed to tuberculosis or asbestos, thereby putting them at risk for development of disease. Such cases have allowed recovery, in limited circumstances, based on fear of developing disease. Dobran points to two cases to support his position.

{¶ 16} First, in *Padney v. MetroHealth Med. Ctr.* (2001), 145 Ohio App.3d 759, 764 N.E.2d 492, the Eighth District Court of Appeals considered a case where

Edward Padney contracted tuberculosis, allegedly through his employment at MetroHealth Medical Center. Padney died from the disease and his wife and daughter tested positive for tuberculosis, presumably from their contact with him. Padney's wife and daughter sued MetroHealth, alleging that the hospital's intentional wrongdoing caused Padney's illness and that MetroHealth negligently caused them emotional distress. The trial court granted MetroHealth's motion for a directed verdict at the conclusion of plaintiffs' case. Despite the fact that Padney's wife and daughter had a latent form of tuberculosis and had not developed an active form of the disease at the time of the suit, the appellate court reversed, holding that sufficient evidence existed from which a reasonable jury could conclude that MetroHealth had negligently inflicted emotional distress on plaintiffs by causing them to fear the development of active tuberculosis.

{¶ 17} The second case relied upon by Dobran is *Norfolk & W. Ry. Co. v. Ayers* (2003), 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261. The case was brought by six asbestosis claimants pursuant to the Federal Employer's Liability Act, Section 51 et seq., Title 45, U.S.Code ("FELA"). The United States Supreme Court held that an asbestosis claimant, upon demonstrating a reasonable fear of cancer stemming from his present disease, can recover for that fear as part of his asbestosis-related damages for pain and suffering. The court applied the zone-of-danger test, iterated in *Metro–North Commuter RR. Co. v. Buckley* (1997), 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560, and *Consol. Rail Corp. v. Gottshall* (1994), 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427, "to delineate the 'proper scope of an employer's duty under [the] FELA to avoid subjecting its employees to negligently inflicted emotional injury' * * *. That test confines recovery for stand-alone emotional distress claims to plaintiffs who: (1) 'sustain a physical impact as a result of a defendant's negligent conduct'; or (2) 'are placed in immediate risk of physical harm by that conduct'—that is, those who escaped instant physical harm, but were 'within the zone of danger of physical impact.'" *Norfolk* at 146, 123 S.Ct. 1210, 155 L.Ed.2d 261, quoting *Gottshall*, 512 U.S. at 554 and 547–548, 114 S.Ct. 2396, 129 L.Ed.2d 427.

{¶ 18} Dobran's reliance upon *Padney* and *Norfolk* is misplaced. The fundamental difference is that the plaintiffs' illnesses in *Padney* and *Norfolk* were caused by the negligence of the defendants. The *Norfolk* zone-of-danger test specifically requires that a plaintiff either sustained a physical impact as a result of a defendant's negligent conduct or was in the "zone of danger," i.e., was placed in immediate risk of physical harm. Mr. Dobran did not contract cancer as a result of DCOP's allegedly negligent actions. In the event that his cancer ever returns, it will not be because DCOP placed him in any immediate risk of physical harm.

{¶ 19} As we stated in *Heiner*, "the facts of this case remind us that not every wrong is deserving of a legal remedy. * * * While we remain vigilant in our efforts to ensure an individual's 'right to emotional tranquility,' we decline to expand the law to permit recovery on the facts of this case." (Citation omitted.) *Heiner*, 73 Ohio St.3d at 88, 652 N.E.2d 664, quoting *Paugh*, 6 Ohio St.3d at 74, 6 OBR 114, 451 N.E.2d 759.

### III

{¶ 20} Finally, the Dobrans request that we consider whether they may recover damages for emotional distress under their claim for breach of bailment. They acknowledge that the trial court and appellate court declined ruling on this issue, and the Dobrans did not petition this court for jurisdiction of the issue. As such, the matter is not properly before this court and we decline to rule upon it.

{¶ 21} The judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.

Judgment reversed.

MOYER, C.J., LUNDBERG STRATTON and O'DONNELL, JJ., concur.

RESNICK, F.E. SWEENEY and PFEIFER, JJ., dissent.

———————

**PFEIFER, J., dissenting.**

{¶ 22} In reaching its decision in this matter, the majority applies an inapposite case and compounds misapprehensions about the ability of Ohio plaintiffs to recover damages for emotional injuries. I accordingly dissent.

{¶ 23} The majority decision relies heavily on *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 652 N.E.2d 664, where this court held that a plaintiff cannot recover for negligent infliction of emotional distress when she is given a false positive on an AIDS test. While I dissented from that decision, I appreciate that there are public-policy reasons for finding that there was no cause of action in that case. First, in certain populations false positives from AIDS tests can be relatively common, see Peter H. Duesberg, The HIV Gap in National AIDS Statistics (Aug. 1993), 11 Bio/Technology 955–956, and the vulnerability to lawsuits for such results might well have negative effects on the overall administration of AIDS testing. More important, any psychological impact of a false positive AIDS test result can usually be negated by simply taking another test. It would seem to be standard procedure that anyone testing positive for AIDS would be retested to confirm the results.

{¶ 24} In this case, there is no possibility for a retest. Dobran has no more sentinel lymph nodes. Dobran has lost *forever* the prognostic and diagnostic value of sentinel lymph PCR screening. As Dobran's doctor acknowledged, there is no more sensitive test known to detect submicroscopic metastasis. Negative PCR results would have given Dobran a nearly 100 percent assurance of a life free from melanoma. Instead, he is left with doubt. The plaintiff in *Heiner* got a scare; Dobran, on the other hand, lives in fear. The situations are not comparable.

{¶ 25} What Dobran's unresolved fear is worth is a question for a jury. The fact that he had a reassuring result from a test employing traditional histology should be weighed by a jury against Dobran's claims of emotional distress and not used by this court as a basis for summary judgment against him. This court's holding is that a man who claims to live daily with the fear of a recurrence of cancer is not entitled to his day in court, whereas a man who sees a sheet of glass shatter, *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, and a woman whose house is hit by a car while she is sleeping, *Paugh v. Hanks* (1983) 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, can recover damages for their emotional distress.

{¶ 26} This court has lost sight of the meaning of *Schultz* and *Paugh*. In *Schultz*, this court recognized for the first time that "[a] cause of action may be stated for the negligent infliction of serious emotional distress without a contemporaneous physical injury." Id. at syllabus. *Schultz* stood for the proposition that "[e]motional injury can be as severe and debilitating as physical harm and is deserving of redress." Id., 4 Ohio St.3d at 135, 4 OBR 376, 447 N.E.2d 109.

{¶ 27} The court reiterated that point in *Paugh:*

{¶ 28} "We view our decision today as a bold and promising step in ensuring an individual's right to emotional tranquility which is redressable in an action against a blameworthy defendant for the negligent infliction of serious emotional distress." *Paugh*, 6 Ohio St.3d at 74, 6 OBR 114, 451 N.E.2d 759.

{¶ 29} Beyond that statement regarding the general redressability of emotional injuries, the *Paugh* court addressed the more narrow, case-sensitive issue of emotional injuries to bystanders to accidents. In relation to that issue, the court introduced the element of "cognizance or fear of peril." Id. at paragraph four of the syllabus. The court did not require proof of that element in all cases where emotional injury was alleged, but in that specific category of cases where plaintiffs alleged injury because they witnessed an accident.

{¶ 30} Cognizance of peril is an important part of witness cases because of the issue of foreseeability of injury to someone not directly involved with the accident. Witnesses see the harm that befalls someone else, but do not suffer direct harm to themselves. In regard to the foreseeability issue in bystander

cases, the court imposed requirements as to the plaintiff's recognition of peril. The requirements speak of the "victim" as someone other than the plaintiff, and the foreseeability of emotional injury to the plaintiff is partially tied to his relationship to the "victim." *Paugh*, at paragraph 3b of the syllabus.

{¶ 31} Here, Dobran *is* the victim. The wrong was done to him. His is a different character of case than the cases involving witnesses to accidents. Thus, we should not apply the foreseeability test from those cases to Dobran. The only aspect of *Schultz* and *Paugh* relevant to this case is the sufficiency of serious emotional distress to prove the tort element of injury. Dobran must meet the definition of serious emotional distress outlined in *Paugh:*

{¶ 32} "Serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Id., 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraph 3a of the syllabus.

{¶ 33} The impending-physical-calamity requirement does not apply to this class of cases. Dobran must simply prove that he suffered serious emotional distress, that the defendants were negligent, that they were the proximate cause of his injuries, and that the injuries were reasonably foreseeable. This is a simple negligence case without complications and should be tried as such.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

———————

Sam G. Caras Co., L.P.A., Sam G. Caras and Tarin S. Hale, for appellees John and Charlene Dobran.

Walsh & Reiling and Richard B. Reiling, for appellant Dayton Clinical Oncology Program.