{¶ 70} I respectfully dissent from the majority's opinion. Although the expert testified that Dr. Myers' and the nursing staff's provided below standard of care, he failed to state the substandard care was the proximate cause of the decedent's death. When asked to state whether the Coumadin was the proximate cause of death within a reasonable degree of medical probability, the expert refused.
"Q. And, Doctor, in reality, you would agree with me that even if the nurses had done what you wanted them to do and the INR results were received on December 4th, you can't tell me to a medical probability that that would have prevented Mr. Berlin's death, correct?
"A. Yes, because he had several other illnesses that certainly also could have resulted in his demise."
"Q. So the answer to my ultimate question is, you agree that even if they come back on the 4th, you can't tell me to the probability that you are required to testify to that that would have prevented his death, correct?
"A. Yes.
"Q. Okay. Now, as it relates to your second criticism, which kind of goes along the same lines of this INR not coming back on the 4th as you wanted it to, even if those results were tracked down within 24 hours as you opined they should have, you can't tell me to a reasonable degree of medical certainty that even if he had that that would have prevented his death, correct?"
"A. Yes."[1]
 {¶ 71} Instead, as stated by the majority, the expert believed the Coumadin was a contributing cause because it hindered the decedent's ability to recover. In fact, the problem with the Coumadin dosage was corrected eighteen days prior to the decedent's death, when the altered dosage returned the blood to normal levels. The majority contends that Dr. Baum testified on direct examination to a reasonable degree of medical probability that the Coumadin was the proximate cause of the decedent's death, I read the record that he opined it was a "contributing factor," not the proximate cause.
 {¶ 72} I agree that the expert's testimony would support a claim under the "loss of chance" doctrine pursuant to Roberts v.Ohio Permanente Med. Group, Inc.[2] But, the plaintiff did not raise a "loss of chance" claim in his complaint nor in his appellate brief.
In fact, plaintiff's counsel admitted at oral argument that he was not pursuing a "loss of chance" claim.[3]
 {¶ 73} Consequently, the trial court got it right. A failure to present expert opinion evidence on proximate causation is fatal to a medical malpractice claim. Additionally, a "loss of chance" claim was not raised, and we are precluded from interjecting it. I would affirm the trial court.
[1] Tr. at 135-136.
[2] 76 Ohio St.3d 483, 488, 1996 Ohio 375.
[3] The Ohio Supreme Court has previously reprimanded an appellate court that addressed the loss of chance doctrine when it had not been raised. See, Dobran v. Franciscan Med. Ctr.,102 Ohio St. 3d 54 at FN 1; 2004 Ohio 1883.