OPINION
{¶ 1} Plaintiffs-appellants Margaret Heintzelman, individually and as administratrix of the estate of Jeffrey K. Heintzelman, deceased, appeal a judgment of the Court of Common Pleas of Delaware County, Ohio, entered in favor of defendant Air Experts, Inc. on a jury verdict finding Air Experts was not liable for the wrongful death of plaintiff's decedent Jeffrey K. Heintzelman. Heintzelman won a verdict against another defendant, Tom Martel, the subject of the cross appeal infra.
 {¶ 2} Heintzelman assigns three errors to the trial court:
 {¶ 3} "I. THE TRIAL COURT ERRED IN FAILING TO GRANT PLAINTIFFS' ORAL MOTION FOR A DIRECTED VERDICT AS TO THE LIABILITY OF DEFENDANT-APPELLEE AIR EXPERTS, INC.
 {¶ 4} "II. THE TRIAL COURT ERRED IN FAILING TO GRANT PLAINTIFFS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AS TO DEFENDANT-APPELLEE AIR EXPERTS, INC.
 {¶ 5} "III. THE JURY'S VERDICT IN FAVOR OF DEFENDANT-APPELLEE AIR EXPERTS, INC. WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} The record indicates in approximately August of 1999, the Heintzelmans hired defendant Tom Martel, dba Martel Heating and Cooling to install a central air conditioning unit in their home. By September, 1999 Martel installed the unit in the home's unfinished attic. The Heintzelmans did not use the air conditioning unit in 1999.
 {¶ 7} In the summer of 2000, when the Heintzelmans turned on their air conditioning unit, they discovered it did not cool properly, and leaked water, damaging the ceiling of the foyer beneath it. Martel returned to the home three times in the summer of 2000. The Heintzelmans alleged Martel installed a condensate pump to remove excess water caused by condensation generated by the air conditioning unit. The pump was connected by a short pipe to a drain pan beneath the air conditioning unit and directed the accumulated water to the outside of the house. The pump was equipped with a three-prong power cord. Evidence adduced at trial indicated the outlet into which the pump was plugged was never encased in a protective box or attached to a wall. No one disputed this exposed outlet was extremely dangerous. At trial, Martel denied he installed the pump and outlet.
 {¶ 8} In 2001, the Heintzelmans again attempted to use the air conditioner, and it again failed to cool. In addition, water continued to drip through the ceiling of the foyer, leaving large water stains. They tried to contact Martel but he was no longer in business. The Heintzelmans hired defendant-appellee Air Experts, Inc to service the unit.
 {¶ 9} The parties disputed whether or not the Heintzelmans ever advised there was a problem with leakage of condensation. Appellant Margaret Heintzelman was not present when Air Experts made its service call, and could only testify regarding what decedent told her. Dennis Louth, the service man for Air Experts, testified he did not recall the specifics of the service call he made to the Heintzelman home, but the invoice indicated the complaint was the air conditioning system was not cooling the home. The invoice did not indicate Louth was asked to examine the pump.
 {¶ 10} On three occasions, the decedent went into the attic to re-attach a pipe that had come loose from the pump, the last time within two weeks of his fatal accident. Re-attaching the pipe to the pump eliminated the dripping problem. In order to illuminate the attic, decedent ran string of Christmas lights along some joists and plugged it into an outlet in the hallway below.
 {¶ 11} Heintzelman argued when Louth made his service call the water damage was very obvious and Louth should have been aware of the problem. He did not correct the problems with the system, but because it was the end of the summer, the Heintzelmans did not call Air Experts to return in 2001.
 {¶ 12} When the Heintzelmans turned on the air conditioning for the first time in 2002, it once again began to leak. On July 15, 2002, decedent went into the attic to work on the air conditioning unit. Approximately 30 minutes later, Margaret Heintzelman went to look for him. She found him slumped over the air conditioning unit, and called 911. The emergency personnel who responded turned off the power to the house and unsuccessfully attempted to resuscitate decedent. Decedent's official cause of the death was cardiac arrhythmia caused by electrocution.
 {¶ 13} Two days after decedent's accident, William Fling installed a new condensate pump in the Heintzelmans' attic. When Fling installed the new pump, he hard wired it into the air conditioning unit by cutting off the plug and making the electrical connections inside the unit's cabinet. Fling testified it is safer to hard wire the pump so a homeowner cannot disconnect the pump without also disconnecting the air conditioning unit.
 {¶ 14} Fling also testified there was a maze of electrical wires everywhere in the attic. Fling testified there was no disconnect switch, no service outlet, and an inadequate secondary drain on the air handling unit, but he did not fix all these items because they were not related to the repair call he made.
 {¶ 15} Thomas Martel testified it is his practice to hard wire a condensate pump into the air conditioning unit, and he asserted he did not install the pump or the electrical outlet that caused the accident.
 {¶ 16} The Heintzelmans brought suit against Tom Martel and Air Experts, Inc. The jury returned a verdict against Tom Martel dba Martel Heating and Cooling in the amount of $1,014,186.00 on the wrongful death claim, and $2,650,000.00 on Margie Heintzelman's claim for negligent infliction of emotional distress. The jury found no comparative negligence on the part of decedent. The jury returned a verdict in favor of Air Experts, Inc. The court overruled the Heintzelmans' oral motion for judgment notwithstanding the verdict.
 I II {¶ 17} In their first assignment of error, the Heintzelmans urge the court erred in overruling their motion for directed verdict against Air Experts. The Heintzelmans' second assignment of error argues the trial court should have sustained their motion for judgment notwithstanding the verdict. Our standard of reviewing both motions is the same. In Posin v. A.B.C. MotorCourt Hotel, Inc. (1976), 45 Ohio St. 2d 271, the Ohio Supreme Court held a trial court must construe the evidence adduced at trial and any facts established by admissions in the pleadings and record most strongly in favor of the party against whom the motion is made. If it finds there is substantial evidence to support the non-movant's case, upon which reasonable minds may reach different conclusions, the court must overrule the motion. The trial court does not determine weight of the evidence or credibility of witnesses.
 {¶ 18} In Wagner v. Roche Laboratories, 77 Ohio St. 3d 116,1996-Ohio-85, the Supreme Court noted under the reasonable minds test, the court must determine whether there is any evidence of substantial probative value in support of the claims of the non-moving party. Although the court must review the evidence in deciding the motion, a motion for directed verdict raises only questions of law, Id. On questions of law, this court reviews a trial court's judgment de novo.
 {¶ 19} The Heintzelmans urge their expert testified regarding the standard of care to which HVAC technicians are held. Their expert, Jim Ozinga, testified a technician should look for evidence of a water leak which would indicate a broken, blocked, or improperly installed condensate drain. Ozinga testified the pump and electrical outlet were improperly and poorly installed. The pump was close to the area Air Experts examined, and Air Experts should have seen the electrical outlet.
 {¶ 20} Ozinga offered his expert opinion Louth should have checked the condensate pump and its power source even if he was only called for a cooling problem. Ozinga testified failure to either fix the outlet or warn the homeowner deviates from the standard of care to be used by a competent HVAC technician.
 {¶ 21} The Heintzelmans cite us to State v. Brown (1983),5 Ohio St. 3d 133, as authority for the proposition uncontradicted expert opinion may not arbitrarily be ignored, and there must be some objective reasons for ignoring expert opinion testimony. The Heintzelmans urge Oziniga's testimony was uncontradicted, and the trial court should have granted a directed verdict or judgment notwithstanding the verdict on Ozinga's testimony.
 {¶ 22} Over objection, Air Experts presented the expert opinion of William Fling, who had worked in the HVAC for over twenty years. Fling testified Air Expert's technician was not negligent. Air Expert also called Ralph Hoffman, a registered professional electrical engineer. Although Hoffman could not testify as an HVAC technician, he did express the opinion it would be unnecessary for an HVAC technician to trace an electrical cable back to its connection if it was delivering electrical power.
 {¶ 23} Oziniga's testimony was not uncontradicted. We find there was sufficient evidence presented at trial to warrant the trial court's submission of the issues to the jury, and to support the jury's verdict.
 {¶ 24} The first and second assignments of error are overruled.
 III. {¶ 25} In their third assignment of error, the Heintzelmans urge the jury's verdict was against the manifest weight of the evidence. This court may overturn a jury verdict as against the manifest weight of the evidence only if the verdict is not supported by competent, credible evidence which goes to all the essential elements of the case, C.E. Morris Company v. FoleyConstruction Company (1978), 54 Ohio St. 2d. 279. We have reviewed the record, and we find the verdict is supported by competent and credible evidence going to all the essential elements. We conclude the jury's verdict is not against the manifest weight of the evidence.
 {¶ 26} The third assignment of error is overruled.
 {¶ 27} On cross-appeal, defendant Tom Martel assigns two errors to the trial court:
 {¶ 28} "I. THE TRIAL COURT ERRED IN FAILING TO GRANT A MOTION OR DIRECTED VERDICT ON PLAINTIFFS' CLAIM FOR NEGLIGENT INFLICTION OF SERIOUS EMOTIONAL DISTRESS AND JUDGMENT NOTWITHSTANDING THE VERDICT ON PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF SERIOUS EMOTIONAL DISTRESS.
 {¶ 29} "II. THE TRIAL COURT ERRED IN DENYING DEFENDANT MARTEL HEATING COOLING'S MOTION TO VOID JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND PLEADINGS."
 I {¶ 30} In his first assignment of error, Martel urges the trial court should have granted his motion for directed verdict on Margaret Heintzelman's claim for negligent infliction of serious emotional distress, or, in the alternative, should have granted judgment notwithstanding the verdict.
 {¶ 31} In the recent case of Heiner v. Moretuzzo,73 Ohio St. 3d 80, 1995-Ohio-65, 652 N.E. 2d 664, the Ohio Supreme Court traced the evolution of the tort of negligent infliction of emotional distress. For many years, the law required contemporaneous physical injury, and there was no liability if an act of negligence caused fright or shock, even if subsequent illness resulted, Heiner at 82.
 {¶ 32} In Schultz v. Barberton Glass Company (1983),4 Ohio St. 3d 131, the Supreme Court modified Ohio law in a case where a sheet of glass fell from a truck and smashed into the windshield of Schultz's vehicle. Schultz fortunately sustained no physical injuries, but experienced severe emotional distress. The Ohio Supreme Court found a cause of action could be stated for negligent infliction of emotional harm without a contemporaneous physical injury.
 {¶ 33} The court expanded the notion further in Paugh v.Hanks (1983), 6 Ohio St. 3d 72. Because of where the Paugh family home was situated, three vehicles crashed into the property in the space of several months. The Paugh family sued for negligent infliction of serious emotional distress. The Supreme Court held a bystander to an action may recover for emotional distress if the emotional injury is both serious and reasonably foreseeable. The court described serious emotional distress as so severe and debilitating, a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. The Supreme Court set forth three factors to be considered in determining whether a negligently inflicted emotional injury was reasonably foreseeable: (1) whether the plaintiff was located near the scene of the accident, rather than some distance away; (2) whether the shock resulted from a direct emotional impact upon the plaintiff from sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the degree of relationship between the plaintiff and victim. The Supreme Court found a bystander may recover if he or she reasonably appreciated the peril which took place, whether the victim actually suffered any physical harm.
 {¶ 34} In Binns v. Fredenall (1987), 32 Ohio St.3d 244, the Supreme Court held: "Recovery for negligently inflicted emotional and psychiatric injuries accompanied physical injury may include damages for mental anguish, emotional distress, anxiety, grief or loss of enjoyment of life caused by the death or injury of another, provided the plaintiff is directly involved and contemporaneously injured in the same motor vehicle and accident with the deceased or other injured person." Syllabus by the court, paragraph 3. The Binns case dealt with a harrowing ordeal when a slightly injured person was trapped in the vehicle with her dead boyfriend leaning against her shoulder, bleeding onto her clothing. It is worthy of note the Supreme Court stressed the plaintiff could recover because she was slightly injured in the accident.
 {¶ 35} In Gearing v. Nationwide Ins. Co. (1996),76 Ohio St.3d 34, the Supreme Court found Ohio law limited recovery for claims alleging negligent infliction of emotional distress to situations where the plaintiff was a bystander to an accident or was in fear of physical consequences to himself. In Dobran v.Franciscan Medical Center, 102 Ohio St. 3d 54, 2004-Ohio-1883,806 N.E. 2d 537, the Ohio Supreme Court discussed the zone of danger test, albeit in a different context. The Supreme Court found the zone of danger test specifically requires the plaintiff either sustain a physical impact as a result of the defendant's negligent conduct, or be in immediate risk of physical harm. In neither Dobran case nor Heiner, supra, did the court find the plaintiff could recover because neither was at risk of immediate physical harm. Dobran involved the possibility of recurrent cancer, while Heiner dealt with a false positive test for the HIV virus. Both situations undoubtedly generated extreme distress.
 {¶ 36} Here, Margaret Heintzelman, searching for her husband, climbed the stairs into the attic. She saw him slumped over the air conditioning unit. He did not respond when she screamed his name, and she started towards him. Fortunately, she did not touch him, and ran from the attic. In her 911 call, she reported decedent may have been electrocuted.
 {¶ 37} Margaret Heintzelman argues when she entered the attic she was in the zone of danger because she perceived the danger of being electrocuted. We find she was not within the zone of danger as contemplated by the Ohio Supreme Court. Here, Margaret Heintzelman appreciated her husband lay in the zone of danger but did not enter it.
 {¶ 38} Margaret Heintzelman also argues she observed the accident scene, and so the bystander rule should apply to her. We do not agree. Heintzelman did not witness the actual electrocution, and was never in close proximity to decedent. The tort requires a finding a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. While the accident scene she observed was extremely distressing, we find it does not meet the requirements of the Supreme Court.
 {¶ 39} We find the trial court erred as a matter of law in not directing the verdict in favor of Thomas Martel on the issue of negligent infliction of emotional distress.
 {¶ 40} The first cross-assignment of error is sustained.
 II. {¶ 41} In his second assignment of error, Martel argues the court should not have permitted the Heintzelmans to amend their complaint, but rather should have voided the judgment as entered against a non-entity. The case was originally filed on December 10, 2002. The complaint named Martel Heating Cooling as a defendant. Martel Heating Cooling is not a corporation.
 {¶ 42} In April of 2003, almost two years before the trial, Thomas Martel gave a deposition, wherein he stated Martel Heating Cooling was not a corporation. Both parties argue their opponents knew or should have known Martel Heating Cooling was not sui juris. Martel urges the Heintzelmans' complaint was flawed but they waited until after judgment had been rendered to move to amend their pleadings. Thomas Martel argues his ability to defend the case was prejudiced. Heintzelman responds Martel never raised the defense, but waited until after the judgment had been rendered against him to raise the issue.
 {¶ 43} Civ. R. 9 requires a party challenging its capacity to be sued must raise the defense by specific negative averment. Martel did not do so.
 {¶ 44} Civ. R. 15 permits the trial court to amend the pleadings to conform to the evidence presented at trial, and this can be done even after judgment.
 {¶ 45} In Patterson v. VM Auto Body (1992),63 Ohio St. 3d 573, the Ohio Supreme Court held a judgment taken against a defendant that is not a legal entity is void, unless the court on motion by a party amends the pleadings to reflect the correct defendant. Civ. R. 15 permits substitution of parties, so long as the party has received notice of the institution of the action, is not prejudiced in defending on the merits, and should have known but for mistake concerning the identity of the proper party, the action would have been brought against him. We have reviewed the record, and it does not demonstrate Martel was prejudiced in defending his interests.
 {¶ 46} On review, we find the trial court did not err in permitting the Heintzelmans to amend their pleadings to name Thomas Martel rather than his business.
 {¶ 47} The second cross assignment of error is overruled.
 {¶ 48} For the foregoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.
By Gwin, J., Wise, P.J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion. Costs to be split between the Heintzelmans and Martel.