[Cite as *Estate of Heintzelman v. Air Experts, Inc.*, 2011-Ohio-5242.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THE ESTATE OF JEFFREY HEINTZELMAN, ET AL. | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| | : | Hon. John W. Wise, J. |
| Plaintiffs-Appellants | : | Hon. Julie A. Edwards, J. |
| | : | |
| -vs- | : | |
| | : | |
| AIR EXPERTS, INC., ET AL. | : | Case No. 11CAE050043 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:　　　　Appeal from the Court of Common
　　　　　　　　　　　　　　　　　　　　　Pleas, Case No. 04CVH-04-233

JUDGMENT:　　　　　　　　　　　　　Affirmed

DATE OF JUDGMENT:　　　　　　　　October 10, 2011

APPEARANCES:

For Plaintiffs-Appellants　　　　　　　For Defendant-Appellees

CHARLES H. COOPER, JR.　　　　　　BRUCE A. CURRY
REX H. ELLIOTT　　　　　　　　　　　8000 Ravine's Edge Court, #103
2175 Riverside Drive　　　　　　　　　Columbus, OH　43235
Columbus, OH　43221

*Farmer, J.*

{¶1} In August of 1999, Jeffrey and Margaret Heintzelman hired Tom Martel, dba Martel Heating and Cooling, to install an attic air conditioner in their home. The air conditioner never worked properly. Mr. Martel attempted to fix the problem, but was unsuccessful.

{¶2} In 2001, the Heintzelmans hired Air Experts, Inc. to fix the air conditioner. Air Experts was unable to repair the unit and the problems continued.

{¶3} On July 15, 2002, Mr. Heintzelman went to the attic to examine leaking from the air conditioner. Mr. Heintzelman was electrocuted by an unprotected outlet providing power to the condensation pump leading to the air conditioner. The outlet had been installed by Mr. Martel.

{¶4} At the time of the installation of the air conditioner, Mr. Martel was insured under a commercial insurance policy issued by appellee, American Family Insurance, Policy No. 34-X03305-01. The policy was in effect from May 18, 1999 to May 18, 2000, with a limit of $500,000.00.

{¶5} On December 10, 2002, appellant, the Estate of Jeffrey K. Heintzelman, together with Mrs. Heintzelman, filed a complaint against Mr. Martel and Air Experts, claiming wrongful death and negligent infliction of serious emotional distress (Case No. 02CVH-12-712). Appellee defended Mr. Martel in the lawsuit. On March 16, 2003, appellant dismissed the action without prejudice.

{¶6} On December 4, 2003, appellee filed a declaratory judgment action (Case No. 03CVH-12-896), seeking a judgment that it did not have a duty to indemnify Mr. Martel for any damages awarded in the case. Appellee did not join appellant as a party nor did appellant seek to intervene.

**{¶7}**　On March 4, 2004, appellee filed a motion for default judgment based upon Mr. Martel's failure to answer or otherwise defend the action. The trial court granted the motion on March 10, 2004. In March of 2007, Mr. Martel filed a motion to vacate the default judgment. By judgment entry filed March 12, 2007, the trial court denied the motion, finding the motion was untimely filed.

**{¶8}**　On April 9, 2004, appellants again filed a complaint against Mr. Martel and Air Experts (Case No. 04CVH-04-233). A jury trial commenced on February 28, 2005. The jury found in favor of appellant, awarding the estate $1,014,186.00 and Mrs. Heintzelman $2,650,000.00 on her emotional distress claim. The award to Mrs. Heintzelman was subsequently reversed by this court. See, *Estate of Heintzelman v. Air Experts, Inc.,* Delaware App. No. 2005-CAPE-08-0054, 2006-Ohio-4832, (hereinafter "*Heintzelman I*").

**{¶9}**　On May 10, 2005, while the appeal was pending, appellant filed a supplemental complaint against appellee, claiming appellee must indemnify Mr. Martel (Case No. 04CVH-04-233). Appellee filed a motion for summary judgment on October 6, 2005, claiming in part that appellant could not collaterally attack the default judgment in favor of appellee and against Mr. Martel, and Mr. Martel was not entitled to coverage under the insurance policy. The trial court stayed the case pending the outcome of the appeal.

**{¶10}**　On August 23, 2006, Mr. Martel filed a separate complaint against appellee, claiming fraud and misrepresentation regarding coverage under the policy and over the default judgment in the declaratory judgment action (Case No. 06CVH-08-761).

{¶11} On December 15, 2006, appellee filed a motion to dismiss Mr. Martel's complaint, claiming res judicata because of the declaratory judgment decision in Case No. 03CVH12-0896.  By judgment entry filed February 1, 2007, the trial court granted the motion.  On appeal, this court reversed, finding res judicata did not apply to the specific claims made by Mr. Martel.  *Martel v. American Family Insurance Company,* Delaware App. No. 07CAE020012, 2007-Ohio-4819.

{¶12} Upon remand by this court in *Heintzelman I,* the trial court adjusted the award for emotional distress to $0 (Case No. 04CVH-04-233).  See, Judgment Entry filed August 6, 2007.  By separate entry filed August 6, 2007, the trial court granted appellee's motion for summary judgment that had been stayed in Case No. 04CVH04-0233, finding appellant was bound by the default judgment rendered against Mr. Martel in Case No. 03CVH12-0896.  On appeal, this court reversed the trial court's decision granting appellee's motion for summary judgment, finding appellant as a judgment creditor was not bound by the declaratory judgment because appellee had initiated the declaratory judgment against its insured, Mr. Martel.  See, *Estate of Heintzelman v. Air Experts, Inc.,* Delaware App. No. 07CAE090054, 2008-Ohio-4883, (hereinafter "*Heintzelman II*").  The Supreme Court of Ohio affirmed the decision in *Heintzelman II.* See, *Estate of Heintzelman v. Air Experts, Inc.,* 126 Ohio St.3d 138, 2010-Ohio-3264.

{¶13} Upon remand by this court in *Heintzelman II,* affirmed by the Supreme Court of Ohio, the trial court entertained motions for summary judgment filed by appellant and appellee on the issue of insurance coverage on the wrongful death award.  By judgment entry filed April 29, 2011, the trial court denied appellant's motion and granted appellee's motion, finding the subject insurance policy was not in effect at

the time of appellant's death, appellee had not waived its defense of no coverage, and the doctrine of estoppel did not apply.

{¶14} Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶15} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR SUMMARY JUDGMENT AGAINST AMERICAN FAMILY REGARDING COVERAGE UNDER AMERICAN FAMILY'S INSURANCE POLICY AND INSTEAD GRANTED AMERICAN FAMILY'S MOTION FOR SUMMARY JUDGMENT."

I

{¶16} Appellant claims the trial court erred in granting summary judgment to appellee.  Specifically, appellant claims the trial court erred in finding there was no coverage under the subject policy as the "occurrence" that caused bodily injury took place in the "coverage territory" and the property damage occurred during the policy period.  We disagree.

{¶17} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56.  Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

{¶18} "Civ.R. 56(C)  provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is

adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."

{¶19} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35.

{¶20} "An insurance policy is a contract and the relationship between the insurer and the insured is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 262, 472 N.E.2d 1061, 1062. The interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally. *Gomolka v. State Auto. Mut. Ins. Co.* 1982), 70 Ohio St.2d 166, 167-168, 24 O.O.3d 274, 275-276, 436 N.E.2d 1347, 1348-1349; *Value City, Inc. v. Integrity Ins. Co.* (1986), 30 Ohio App.3d 274, 276, 30 OBR 472, 474, 508 N.E.2d 184, 186. In insurance policies, as in other contracts, words and phrases are to be given their plain and ordinary meaning unless there is something in the contract which would indicate a contrary intention. *Olmstead v. Lumbermen's Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 51 O.O.2d 285, 288, 259 N.E.2d 123, 126. Where the provisions of an insurance policy are clear and unambiguous, courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties. *Gomolka, supra,* 70 Ohio St.2d at 168, 24 O.O.3d at 276, 436 N.E.2d at

1348. However, where the provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, paragraph one of the syllabus." *Nationwide Insurance Company v. Tobler* (1992), 80 Ohio App.3d 560, 563-564.

{¶21} In its brief at 3-4, appellant sets forth undisputed facts. Although appellee did not accept these facts, appellee presented undisputed facts in its motion for summary judgment consistent with appellant's. Appellant's undisputed facts are as follows:

{¶22} "1. Jeff and Margie Heintzelman lived in a house on Berlin Station Road in Delaware, Ohio. [TR. 328.]

{¶23} "2. In August of 1999, the Heintzelmans hired Martel to install a central air conditioning unit in their home. [TR. 338]. The unit was installed by mid-September, 1999. [TR. 340.]

{¶24} "3. When the unit was turned on it leaked water. As a result, Martel was called back to the Heintzelmans' property in the fall of 1999. [Amer. Fam. MSJ, p. 3.]

{¶25} "4. The unit Martel installed leaked through the ceiling, causing property damage [TR. 344], and Martel offered to paint the ceiling where the leaks had damaged the Heintzelmans' property. [TR. 781.]

{¶26} "5. The recurrent leaks that began in 1999 caused a loss of use of the HVAC unit. Between the time it was installed and the time of Jeff Heintzelman's death, the Heintzelmans were able to use the HVAC unit only sporadically due to the leaks. [TR. 347-348.]

{¶27} "6. A Delaware County jury found that Jeff Heintzelman was killed on July 15, 2002 as a result of Martel's negligent installation of the unit when Mr. Heintzelman went to the attic to once again examine the HVAC unit.

{¶28} "7. American Family issued insurance policy no. 34 X03305-01 to Tom Martel d/b/a Martel Heating & Cooling.  See Exhibit A.  The policy was in effect during the period May 18, 1999 to May 18, 2000.

{¶29} "8. Property damage occurred between May 1999 and May 2000.  [Amer. Fam. MSJ, p. 3.]

{¶30} "9. The Estate filed suit against Tom Martel on December 10, 2002.

{¶31} "10. American Family immediately retained counsel for Martel and began defending him.  American Family did not issue a 'Reservation of Rights' letter until June 30, 2003.

{¶32} "11. The 'Reservation of Rights' American Family issued to Tom Martel misstated a key provision of Martel's insurance policy."

{¶33} The coverages at issue are contained in the 1999-2000 commercial general liability policy.  The pertinent parts of the policy are as follows:

{¶34} "COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

{¶35} "1. Insuring Agreement

{¶36} "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.

{¶37} "b. This insurance applies to 'bodily injury' and 'property damage' only if:

**{¶38}** "(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

**{¶39}** "(2) The 'bodily injury' or 'property damage' occurs during the policy period."  See, Commercial General Liability Coverage Form CG 00 01 07 98, Section I.

**{¶40}** "Bodily injury" and "property damage" are defined in the insurance policy as follows:

**{¶41}** "3. 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**{¶42}** "17. 'Property damage' means:

**{¶43}** "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or

**{¶44}** "b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." See, Commercial General Liability Coverage Form CG 00 01 07 98, Section V.

**{¶45}** Appellant argues although the bodily injury did not occur during the policy period, the damage to the property was ongoing from 1999 until 2002, the time of Mr. Heintzelman's death.  Appellee takes the alternative position, arguing the bodily injury occurred outside the policy period and appellant did not assert a property damage claim against Mr. Martel at trial.

**{¶46}** Although the April 9, 2004 complaint generally pled property damages, the judgment entry on the verdict was for wrongful death and compensatory damages only:

**{¶47}** "The Court hereby enters judgment on the jury's verdict against defendant Martel Heating & Cooling and in favor of the Estate of Jeffrey K. Heintzelman on the Estate's wrongful death claim in the amount of $1,014.186.00, and in favor of plaintiff Margaret Heintzelman on her claim for negligent infliction of emotional distress in the amount of $2,650,000.00. The total amount of the verdict against Martel Heating & Cooling is $3,664,186.00. The jury further returned a verdict in favor of Air Experts, Inc. on plaintiffs' claims, and the jury concluded that there was no comparative negligence on the part of Mr. Heintzelman."

**{¶48}** The verdict forms filed March 7, 2005 limited the damages award to appellant's wrongful death claim and Mrs. Heintzelman's emotional distress claim.

**{¶49}** Appellant artfully argues because the insurance policy coverage reads "[t]his insurance applies to 'bodily injury' <u>and</u> 'property damage' and then speaks of " 'bodily injury' <u>or</u> 'property damage'," the estate is covered for bodily injury because the property damage occurred within the policy period. (Emphasis added.) In other words, because this case involves both bodily injury and property damage, the policy provides coverage "if *either* bodily injury <u>or</u> property damage is caused by an occurrence within the coverage territory and if *either* bodily injury <u>or</u> property damage occurs during the policy period." (Emphasis sic.) Appellant's Brief at 6. Appellant argues this position despite the fact that no amount was awarded for property damage and admittedly, the bodily injury occurred outside the policy period.

**{¶50}** We view this argument as creative, but not within the plain reading and understanding of the insurance policy. The word "or" is "used as a functional word to indicate an alternative." Webster's Ninth New Collegiate Dictionary (1991) 829. As

used in the insurance contract, it is a conjunction i.e., a word that joins together sentences and phrases.

{¶51} Using this grammatical definition, the coverage section would then read: "bodily injury occurs during the policy period" and "property damage occurs during the policy period." We cannot accept any other interpretation in applying the plain reading of the policy.

{¶52} We find support for our interpretation in *Ruffin v. Sawchyn* (1991), 75 Ohio App.3d 511, and *Wells v. Westfield Insurance Co.,* Columbiana App. Nos. 99 CO 7 and 99 CO 12, 2001-Ohio-3172. In both cases, the policy language was nearly identical to the policy language sub judice. The courts found no coverage because although the negligence occurred during the policy period, the bodily injury occurred outside the coverage period. Our brethren concluded the policy language was clear and unambiguous.

{¶53} Given that the insurance contract is unambiguous, the facts are undisputed, and the jury verdict related only to bodily injury claims, we concur with the trial court's analysis.

{¶54} Appellant further argues appellee has waived its right to deny coverage because appellee continued to defend Mr. Martel in the underlying action despite issuing a "Reservation of Rights" letter. We disagree with this argument.

{¶55} A "reservation of rights is a notice given by the insurer that it will defend the suit, but reserves all rights it has based on noncoverage under the policy." *Motorists Mutual Insurance Company v. Trainor* (1973), 33 Ohio St.2d 41, 45. By providing such a letter, an insurance company "reserves" its right "to deny coverage at a later date

based on the terms of the policy." *Mastellone v. Lightning Rod Mutual Insurance Co.,* 175 Ohio App.3d 23, 2008-Ohio-311, fn. 7.

**{¶56}** Appellant argues to issue such a letter and then continue to defend is misleading and therefore the "no coverage defense" is waived. Appellant does not cite to any case law supporting this argument that flies in the face of encouraging insurers to defend their insureds in cases involving questionable coverage. Appellee's actions in this case were not misleading as Mr. Martel acknowledged that appellee consistently advanced its denial of coverage. Martel depo. at 67-68.

**{¶57}** Appellant also argues because of an error in the Reservation of Rights letter, appellee should be estopped from denying coverage. There is no showing that Mr. Martel relied on the error. In fact, Mr. Martel does not remember seeing the letter. Martel depo. at 72, 115. We concur with the trial court in its April 29, 2011 judgment entry that no evidence was presented to establish the error induced anyone "to change its position with respect to the coverage issue."

**{¶58}** Upon review, we find the trial court did not err in granting summary judgment to appellee.

**{¶59}** The sole assignment of error is denied.

{¶60} The judgment of the Court of Common Pleas of Delaware County, Oho is hereby affirmed.

By Farmer, P.J.

Wise, J. and

Edwards, J. concur.

_s/ Sheila G. Farmer_____

_s/ John W. Wise_____

_s/ Julie A. Edwards_____

JUDGES

SGF/sg 906

[Cite as *Estate of Heintzelman v. Air Experts, Inc.*, 2011-Ohio-5242.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| THE ESTATE OF JEFFREY HEINTZELMAN, ET AL. | : | |
| | : | |
| Plaintiffs-Appellants | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| AIR EXPERTS, INC., ET AL. | : | |
| | : | |
| Defendants-Appellees | : | CASE NO. 11CAE050043 |


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio is affirmed. Costs to appellant.


s/ Sheila G. Farmer_____


_s/ John W. Wise_____


_s/ Julie A. Edwards_____

JUDGES