OPINION
{¶ 1} Kimberly St. Amand, Howard Spurling ("Howard"), and State Farm Fire and Casualty Company appeal from two judgments of the Montgomery County Court of Common Pleas, which entered summary judgment in favor of Spurling Electric Company and Cincinnati Insurance Company.
 {¶ 2} On March 2, 2002, St. Amand was injured in an automobile accident when her car was hit by a van driven by Howard Spurling. At the time of the accident, Howard worked for Spurling Electric, a company owned by his brother, Robert Spurling ("Robert"), and Robert's wife, and the van he was driving was a company van. State Farm insured St. Amand at the time of the accident, and Cincinnati Insurance insured Spurling Electric.
 {¶ 3} The van driven by Howard at the time of the accident was a cargo van that was equipped with various equipment and supplies that Howard needed in the course of his work for Spurling Electric. Spurling Electric permitted Howard and other employees to drive the vans to and from work and to keep the vans at home when they were not working because the electricians often reported directly to job sites without coming to the company office. The company had a written policy, however, that the vans could not be employed for personal use.
 {¶ 4} The accident occurred in the late evening on a day that Howard did not work, and it is undisputed that he was not acting within the scope of his employment at the time of the accident. Cincinnati Insurance denied coverage for the accident on the ground that Howard did not have permission to use the van for personal use and therefore was not an insured driver under Spurling Electric's policy.
 {¶ 5} St. Amand sued Howard and Spurling Electric seeking damages for her injuries. She also named State Farm, her insurance company, because of the possibility of indemnification for medical expenses paid on her behalf. State Farm filed a cross-claim against Howard and Spurling Electric, and Howard filed a cross-claim against Spurling Electric. Howard filed a third-party complaint for declaratory judgment against Cincinnati Insurance, and St. Amand intervened in this action.
 {¶ 6} St. Amand and Howard filed motions for summary judgment on the applicability of Spurling Electric's liability coverage through Cincinnati Insurance. Spurling Electric and Cincinnati Insurance also filed motions for summary judgment on the same issue. The trial court sustained the motions of Spurling Electric and Cincinnati Insurance and overruled the motions of St. Amand and Howard.
 {¶ 7} St. Amand raises two assignments of error on appeal, and Howard raises one assignment. Both St. Amand and Howard contend that genuine issues of material fact existed as to whether Spurling Electric's liability insurance applied and whether Spurling Electric had negligently entrusted Howard with the van. These issues turn on whether Howard had implied permission to use the van at the time of the accident. It is undisputed that he did not have express permission.
 {¶ 8} Spurling Electric's insurance policy stated that it was covered for all sums an insured must pay as damages for bodily injury or property damage caused by an accident resulting from the ownership and use of a covered automobile. The definition of an insured includes anyone using a covered automobile with permission.
 {¶ 9} To sustain an action for negligent entrustment of a vehicle, the plaintiff must show that the vehicle was driven with the owner's permission and authority, that the person entrusted with the vehicle was an incompetent driver, and that the owner knew or should have known that the driver was incompetent when the vehicle was entrusted to him. Gulla v. Straus (1950),154 Ohio St. 193, 198, 93 N.E.2d 662.
 {¶ 10} Robert Spurling and one of his supervisory employees at Spurling Electric, Keith Hunter, testified in their depositions that the company's written safety policy prohibited the use of company vehicles for personal use and that Howard had signed this policy. They also testified that employees' compliance with this policy was not monitored by the company, but that they had been unaware of any patterns of unauthorized use. Robert did acknowledge that he had been aware of one prior violation of the policy by his brother when Howard had been arrested for driving under the influence while driving a company van two years prior to his accident with St. Amand. Robert had also been aware that Howard had limited driving privileges at the time of his accident with St. Amand, which restricted him to driving to, from, and in the course of work and that Howard had an alcohol problem. It was apparent from the testimony of both men that the brothers were not close and seldom saw each other outside of work. Robert knew, however, that Howard owned another vehicle, and he testified that he had never seen Howard driving the company van for personal use.
 {¶ 11} Howard presented evidence that other people, including Robert, his wife, and Hunter, drove their company vehicles for personal use. Robert explained, however, that he and his wife were permitted to do so because they were the owners of the company and that their vehicles were typical passenger vehicles, not the type of cargo vans issued to the electricians and other employees for use in the course of the business. Hunter also distinguished his responsibilities from those of Howard by stating that, as a supervisor, he was on call 24 hours per day and surmised that this difference distinguished his use of his vehicle from Howard's use.
 {¶ 12} At some points in his deposition, Howard acknoweldged that he knew he was not supposed to use the company van for personal use; at other points, he claimed not to have been told or to have forgotten this policy. He estimated that he had used the company van for about forty percent of his personal business. Howard also testified that he believed he had driven the company van to a family gathering in the past. He did own his own vehicle and could not explain why he had used the company van on the night of the accident.
 {¶ 13} In our view, the written policy prohibiting personal use of the company vehicle and Howard's signature on this document are compelling evidence that he did not have implied permission to use the company van for personal use. (As we have stated previously, the lack of express permission is not disputed.) However, despite a written policy against personal use, when an employer knows of but ignores an employee's disregard for that policy, the employer may be liable under a theory of implied permission.[1] Thus, we must consider whether the evidence presented by Howard and St. Amand created a genuine issue of material fact as to whether Spurling Electric had known of and condoned Howard's personal use of the company van. See Bish v. Pritchard (June 19, 1986), Franklin App. No. 85AP-898.
 {¶ 14} The strongest evidence that Spurling Electric had given its implied permission for Howard's personal use of the company vehicle was that it permitted him to retain a company vehicle after he was convicted of driving under the influence on personal time in a company vehicle in 2000. This is the only undisputed instance in which Robert had knowledge of Howard's personal use of the company vehicle. According to Howard, Robert knew that Howard had had another DUI charge, but that charge had involved his personal vehicle. Robert denied knowledge of other DUIs but admitted knowledge of Howard's drinking problem. Howard also testified that he believed he had driven the company van to a family function at some point in the past, but Robert denied ever seeing Howard in the company van at a family event. In any case, the testimony of both brothers made clear that they were very seldom together outside of work and, even assuming that Howard did drive his company vehicle to a family event, there is no evidence that Robert realized it. Howard's claim that other employees were also permitted to use their company vehicle for personal use is irrelevant because none of those employees — Robert, Robert's wife, and Hunter — held a position comparable to Howard's, and Robert and his wife were the owners of the company.
 {¶ 15} Based on our review of the record, we conclude that the evidence presented by Howard and St. Amand failed to create a genuine issue of material fact as to whether Howard had Spurling Electric's implied permission to use the company van for personal use. Robert's permitting Howard to continue to use a company van for business purposes after the 2000 DUI conviction did not establish that Spurling Electric impliedly permitted Howard to make personal use of a company vehicle in March 2002. Likewise, the possible inference that Robert knew that Howard had driven the company van to a family outing — which Robert denied — at some unspecified time in the past was insufficient to create agenuine issue of material fact as to whether Spurling Electric impliedly permitted Howard to make personal use of the company van in March 2002. Although the movants established that Howard had frequently used the van for personal use, they did not present sufficient evidence that Robert or anyone else at Spurling Electric knew of and condoned this conduct. If they did not know of and condone the conduct, they could not have impliedly permitted it.
 {¶ 16} Spurling Electric's insurance policy through Cincinnati Insurance defined an "insured" as anyone using a covered automobile with its permission. Having found no genuine issue of material fact as to Howard having had express or implied permission to use the company van for personal use, we conclude that the trial court did not err in granting summary judgment in favor of Cincinnati Insurance.
 {¶ 17} A claim for negligent entrustment also requires proof that the owner permitted the vehicle to be used by an incompetent driver. Again, because there was no genuine issue of material fact as to Howard having had express or implied permission to use the company van for personal use, we conclude that the trial court did not err in granting summary judgment in favor of Spurling Electric.
 {¶ 18} The assignments of error are overruled.
 {¶ 19} The judgments of the trial court will be affirmed.
 . . . . . . . . . .
Fain, J. and Donovan, J., concur.
[1] See Keeley v. Hough, Trumbull App. No. 2004-T-38,2005-Ohio-3771 (holding that where a former wife was aware that her former husband had driven her vehicles multiple times, despite her instructions not to do so, and did not take additional steps to prevent such conduct, a reasonable person could conclude that she had given implied permission); Mastranv. Urichich (Mar. 20, 1991), Mahoning App. No. 89 CA 196 (finding genuine issue of material fact as to whether father/employer, who failed to ensure that his son had a valid driver's license and who knew of son's poor driving record, had negligently entrusted son with vehicles on his auto wrecking company lot.)