[Cite as *Hicks v. State Farm Mut. Auto. Ins. Co.*, 2017-Ohio-7095.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JAMES HICKS | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 27103 |
| | : | |
| v. | : | T.C. NO. 16-CV-462 |
| | : | |
| STATE FARM MUTUAL | : | (Civil Appeal from |
| AUTOMOBILE INSURANCE CO. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 4th day of August, 2017.

. . . . . . . . . . .

DOUGLAS D. BRANNON, Atty. Reg. No. 0076603 and KEVIN A. BOWMAN, Atty. Reg. No. 0078223, 130 W. Second Street, Suite 900, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellant

NICHOLAS E. SUBASHI, Atty. Reg. No. 0033953 and ANNE P. KEETON, Atty. Reg. No. 0076811, The Greene Town Center, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
        Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this case, Defendant-Appellant, James Hicks, appeals from a judgment granting summary judgment to State Farm Mutual Automobile Insurance Company ("State Farm"). In support of his appeal, Hicks contends that the trial court erred in finding that Hicks was collaterally estopped from obtaining coverage under the State Farm policy.

**{¶ 2}** We conclude that the trial court's judgment was correct. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Couse of Proceedings

**{¶ 3}** The pertinent facts in this case are not disputed. On May 24, 2010, Danny Norman, Sr. ("Norman") rented a 1997 Dodge Intrepid from Miami Valley Motors, dba Rent a Heap, for use by his son, Danny Norman, Jr. ("Danny, Jr.") Shortly thereafter, on June 5, 2010, the Intrepid was involved in a single-car accident on Interstate 70. At the time, Roy Crackle, III, was driving the Intrepid and Danny, Jr. was a passenger. James Hicks was also a passenger, and sustained serious injuries as a result of the accident. When the accident occurred, Norman was the named insured under an automobile insurance policy issued by State Farm; Danny, Jr. was not listed as a named insured on the policy.

**{¶ 4}** In April 2014, Hicks filed a personal injury action against Norman, Crackle, and Larry Abbott, dba Miami Valley Motors. *See Hicks v. Crackle*, Montgomery C.P. No. 2014-CV-1964 ("*Hicks I*").[1] The complaint in *Hicks I* alleged that Norman had negligently

---

[1] Although Hicks indicated in the trial court that he had previously filed a lawsuit in 2012,

entrusted and/or rented the Intrepid to Crackle. In that action, Norman filed a motion for summary judgment, claiming that he had not entrusted the Intrepid to Crackle.

**{¶ 5}** On October 20, 2015, the trial court in *Hicks I* sustained Norman's motion for summary judgment. In granting summary judgment to Norman on the negligent entrustment claim, the court concluded that "Mr. Norman did not entrust the car to Mr. Crackle." Doc. # 11, Ex. A., p. 5.[2] The court also found that Hicks could not recover from Norman based upon Danny, Jr.'s "downstream entrustment" of the rental vehicle to Mr. Crackle. *Id.* at pp. 5-8.

**{¶ 6}** Concerning the latter claim, the trial court noted Norman's acknowledgment that he had entrusted the vehicle to Danny, Jr. However, the court found no evidence to support Hicks' claim that Danny, Jr. was an incompetent, inexperienced, or reckless driver. The court, thus, concluded that Norman's original entrustment to his son was not negligent, and, by necessary implication, that the requirements for "downstream entrustment" liability had not been established.

**{¶ 7}** Subsequently, Hicks filed the current lawsuit (*Hicks II*) against State Farm. Hicks sought a declaratory judgment that Crackle was an insured under Norman's State Farm automobile insurance policy, and claimed that State Farm was contractually obligated to indemnify Crackle for his negligence while operating the Intrepid. Hicks further alleged that he was a third-party beneficiary of the insurance contract under which

the trial court referred to the 2014 case as *Hicks I*. For consistency and clarity, we will do the same.

[2] The decision granting summary judgment to Norman in *Hicks I* was attached as Exhibit A to State Farm's motion for summary judgment in the current case. For ease of discussion, we will simply refer to the exhibit as Doc. #11, Ex. A. All docket references in this opinion are to the docket of the case that is currently under review.

Crackle was insured. Based on these allegations, Hicks sought $88,587, plus interest and attorney fees, from State Farm.

{¶ 8} The amount of damages relates to the fact that the trial court held a damages hearing in *Hicks I* on November 17, 2015, and awarded Hicks $88,587 for his economic and non-economic damages. The parties agreed on these facts. *See* Doc. # 1, ¶ 18; Doc. #9, ¶ 11. The parties also agreed that a judgment entry reflecting the damages award was filed in *Hicks I* on December 7, 2015. *Id.*

{¶ 9} In its answer, State Farm denied that Hicks was entitled to the requested relief. State Farm also asserted thirteen specific defenses, including that: (1) "Danny Norman, Sr. did not permit, authorize, or otherwise consent to Roy K. Crackle, III operating the Dodge Intrepid"; (2) "Roy K. Crackle, III is not an insured under the automobile insurance policy that the State Farm issued to Danny Norman, Sr."; (3) "The 'collateral attack' doctrine bars the Plaintiff's claims"; and (4) "the doctrines of res judicata, claim preclusion, collateral estoppel, and/or issue preclusion bar the Plaintiff's claims." Doc. #9, p. 3.

{¶ 10} When State Farm filed its answer, it also filed a motion for summary judgment. In the motion, State Farm claimed that collateral estoppel and the "collateral attack doctrine" barred Hicks' claims, and that Hicks lacked standing to bring the declaratory judgment action. Concerning collateral estoppel, State Farm argued that the trial court in *Hicks I* had already decided that Norman did not give Crackle " 'permission and authority' " to operate the Intrepid. Doc. # 11, p. 6. State Farm equated permission with consent, and, therefore, argued that Hicks had already litigated whether Norman gave "consent" for Crackle to drive the vehicle.

{¶ 11} On April 11, 2016, the trial court granted State Farm's motion for summary judgment, concluding that "collateral estoppel bars Mr. Hicks from litigating the issue of whether Mr. Crackle qualifies as an insured party under the Policy" and that State Farm was entitled to judgment as a matter of law.   Doc. # 19, p. 7.

{¶ 12} Hicks appeals from the trial court's judgment.


II.   Did the Court Err in Granting Summary Judgment to State Farm?

{¶ 13} Hicks' sole assignment of error states that:

The Trial Court Erred in Granting Summary Judgment in Favor of Defendant [State Farm] Based on the Principal [sic] of Collateral Estoppel from a Prior Claim against Its Insured.

{¶ 14} As support for this assignment of error, Hicks raises the following issues: (1) whether negligent entrustment and operation within the "scope of consent" involve different issues for purposes of collateral estoppel; and (2) if the parties are not identical, whether collateral estoppel prevents litigation of issues that were not actually litigated in the prior action.

{¶ 15} Before addressing these issues, we will first discuss applicable standards of review.   It is well established that under "Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), citing *Horton v.*

*Harwick Chem. Corp.,* 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus. For summary judgment purposes, "the moving party bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis omitted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996).

{¶ 16} After "the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden" and "may not rest upon the mere allegations or denials of the party's pleadings * * * ." *Dresher* at 293; Civ.R. 56(E). Instead, the nonmoving party must respond, with affidavits or as otherwise permitted by Civ.R. 56, setting "forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Throughout, the evidence must be construed in favor of the nonmoving party. *Zivich* at 369-370; Civ.R. 56(C).

{¶ 17} Our review of trial court rulings on summary judgment motions is de novo. (Citation omitted.) *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-8, 2013-Ohio-2767, ¶ 42. In de novo review, we apply "the same standard that the trial court should have used, and we examine the evidence to determine whether, as a matter of law, no genuine issues exist for trial." *Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8, citing *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997). (Other citation omitted.) Consequently, we do not defer to the trial court's findings. (Citations omitted.) *Id.*

{¶ 18} As was noted, Hicks alleges that the trial court erred in applying collateral estoppel. "The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral

estoppel)." (Citations omitted; italics sic.) *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). Under res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Id.* at syllabus.

{¶ 19} The case before us involves the issue preclusion (collateral estoppel) aspect of res judicata. In issue preclusion, "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." (Citations omitted.) *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998).

{¶ 20} After reviewing the record, we conclude that Hicks is precluded from recovering against State Farm, based on the application of collateral estoppel and the facts litigated in the prior action. For purposes of considering the issues, we will first discuss the trial court's findings in *Hicks I*.

## A. *Hicks I* (2014 Tort Action)

{¶ 21} In *Hicks I*, the trial court held that State Farm's named insured, Norman, was not liable to Hicks on the only basis asserted against him, i.e., negligent entrustment. "To sustain an action for negligent entrustment of a vehicle, the plaintiff must show that the vehicle was driven with the owner's permission and authority, that the person entrusted with the vehicle was an incompetent driver, and that the owner knew or should have known that the driver was incompetent when the vehicle was entrusted to him." *St.*

*Amand v. Spurling*, 2d Dist. Montgomery Nos. 20904, 20929, 21391, 20931, 2006-Ohio-4391, ¶ 9, citing *Gulla v. Straus*, 154 Ohio St. 193, 198, 93 N.E.2d 662 (1950). "It is quite generally held that the liability in such cases arises from the combined negligence of the owner and the driver; of the former in entrusting the machine to an incompetent driver, and of the driver in its operation." *Williamson v. Eclipse Motor Lines*, 145 Ohio St. 467, 471, 62 N.E.2d 339 (1945). *Accord Smith v. The Buckeye Union Ins. Co.*, 2d Dist. Shelby No. 79-CA-9, 1980 WL 352686, *3 (Apr. 21, 1980), citing *Williamson*.

{¶ 22} We have held that a car owner may also be liable " 'for the negligent actions of an entrustee of the original entrustee if it can be shown that the original entrustment was negligent.' " *Dillard v. Campbell*, 2d Dist. Montgomery No. 17969, 2000 WL 353168, *3 (Apr. 7, 2000), quoting *Rogers v. Kazee*, 10 Ohio App.3d 139, 141, 460 N.E.2d 1149 (10th Dist.1983). (Other citation omitted.) Under this theory, State Farm's named insured, Norman, could have been potentially liable for Crackle's negligent actions as a second permittee.

{¶ 23} In rejecting Norman's liability for negligent entrustment, the trial court in *Hicks I* noted the following facts: (1) both Norman and his son, Danny, Jr., had testified that Norman only gave Danny, Jr. permission to drive the car; (2) Norman did not give anyone permission, other than Danny, Jr., to drive the car; and (3) Hicks testified that he had no contact or communication with Norman, and did not know why Crackle was driving the car at the time of the accident. *See* Doc. #11, Ex. A, pp. 2 and 5. The court then held that Norman had established that he was entitled to summary judgment "as a matter of law" on Hicks' claim for negligent entrustment. *Id.* at p. 5.

{¶ 24} The trial court's decision also noted that Hicks had raised the concept of

" 'downstream entrustment' " in responding to Norman's motion for summary judgment. *Id.* This is consistent with our reference in *Dillard* to liability for negligent actions of " 'an entrustee of the original entrustee.' " *Dillard* at *3. While the term "downstream entrustment" has not been specifically used in Ohio jurisprudence, it involves the same concept discussed in *Dillard*, where the "first permittee" allows a person called a "second permittee" to drive a car. *See, e.g., Dillard; West v. McNamara,* 159 Ohio St. 187, 111 N.E.2d 909 (1953). In other words, downstream entrustment is simply a different name for an existing theory of liability.

{¶ 25} The trial court stressed that to recover under this theory, Hicks would be required to prove that Norman had negligently entrusted the Intrepid to Danny, Jr. Doc. # 11, Ex. A, p. 5, citing *Dillard* and *McCarty v. Lynn*, 67 Ohio App.3d 369, 375, 587 N.E.2d 312 (3d Dist.1990). At this point, the trial court again outlined the elements of negligent entrustment. After applying these elements to the facts before it, the trial court concluded that the evidence was "simply inadequate to give rise to a genuine dispute of fact on the question of whether [Danny, Jr.] was 'wholly incompetent' to drive a motor vehicle" on the date of the accident. (Emphasis omitted.) Ex. A, p. 8. Accordingly, the trial court rejected any liability based on the theory of "downstream entrustment."

B. *Hicks II* (Declaratory Judgment Action Against State Farm)

{¶ 26} As was noted, Hicks subsequently filed a declaratory judgment action against State Farm, and State Farm moved for summary judgment on the following grounds: (1) Crackle's use of the Intrepid was not within Norman's "scope of consent" for purposes of making Crackle an "insured" under State Farm's policy; and (2) Hicks lacked

standing to bring the suit under R.C. Chapter 2721.   The trial court granted judgment to State Farm on the first ground, and stated that it was not making any findings about other arguments State Farm had made.   Doc. # 19, p. 7.

{¶ 27} Turning to the content of the insurance policy, the State Farm policy defined an "Insured" in Section I – Liability – Coverage, as follows:

**Who is an Insured**

When we refer to *your car*, a *newly acquired car*, or *a temporary substitute car, insured* means:

1. ***you***;

2. ***your spouse***;

3. the ***relatives*** of the *first **person*** named in the declarations;

4. any other *person* who is not insured for vehicle liability coverage by any other insurance policy; a self-insurance program, or a liability bond while using such a ***car***.   The use of such ***car*** must be within the scope of consent of ***you*** or ***your spouse***; and

5. Any other *person* or organization liable for the use of such a ***car*** by one of the above *insureds*.

(Italics and Bolding sic.)   Doc. #1, Ex. A, pp. "Norman-21-22."

{¶ 28} As noted, Norman was the only "named insured" on the State Farm policy. Under the clear meaning of the policy provisions, the only persons who would be considered an "insured" for purposes of liability coverage were: (1) Norman; (2) Norman's spouse; (3) Danny, Jr. (potentially as a relative); (4) any other person not insured for liability coverage, while using the car within the scope of permission of Norman or his

spouse; and (5) persons or organizations liable for an insured's use of the car. The policy did not give Danny, Jr., authority to consent to a third party's use of the car; the ability to give consent was limited to Norman or Norman's spouse.[3]

{¶ 29} In the trial court, Hicks argued that "permission and authority" to use a vehicle for purposes of negligent entrustment and "scope of consent" under an insurance policy are not equivalent; State Farm contended the contrary. The trial court agreed that State Farm was "largely correct" when it argued these terms had the same meaning. However, the court stated that these terms "need not be completely synonymous." Doc. #19, p. 6. In addition, the court stated that "[t]he court's finding in *Hicks I* that Mr. Norman did not give permission to Mr. Crackle to drive the rental car would not, of itself, necessarily estop Mr. Hicks from arguing in this case that Mr. Norman failed to object to Mr. Crackle's use of the car, thereby giving Mr. Crackle implied permission to do so." (Italics added.) *Id.* However, the court noted that Hicks did not raise the issue of implied permission in *Hicks I.* The court, therefore, held that Hicks could not use a different angle to attack what had already been decided.

{¶ 30} On appeal, Hicks makes the same argument about the lack of equivalence between the two terms, and further argues that the trial court's decision conflicts with applicable law, which requires that " 'the issue * * * must have been actually and directly

---

[3] Coverage for Danny, Jr., may have been excluded under the definition of "temporary substitute car," which requires that the person operating the car has lawful possession. Doc. #1, Ex. A, p. "Norman-33." The decision in *Hicks I* indicated that Norman did not tell the leasing entity that his son would be driving the car. Doc. #11, Ex. A, p. 2. Whether Danny, Jr., had lawful possession is not a required finding for purposes of "scope of consent" or negligent entrustment. It would follow, however, that if Danny, Jr. did not have permission for lawful possession from the owner of the car (who was not Norman, the named insured), Danny, Jr. could not lawfully permit another to drive. The trial court did not discuss this point.

litigated' in the previous action" for collateral estoppel to apply. Appellant's Brief, p. 9. In response, State Farm contends that the issue was actually litigated in the prior action, due to the court's consideration of "downstream entrustment," and the finding that Norman did not entrust the car to Crackle.

{¶ 31} As was noted, "issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." (Citations omitted.) *Fort Frye Teachers Assn.,* 81 Ohio St.3d at 395, 692 N.E.2d 140.

{¶ 32} To decide if privity of parties exists, " 'a court must look behind the nominal parties to the substance of the cause to determine the real parties in interest.' " *Id.* at 396, quoting *Trautwein v. Sorgenfrei*, 58 Ohio St.2d 493, 501, 391 N.E.2d 326 (1979). Thus, the court must "consider which party estoppel is being asserted against." *Id.* Although State Farm was not a party to the prior action, Hicks was a party, and estoppel is being asserted against Hicks. As Hicks indicates, we have allowed " 'the use of non-mutual defensive collateral estoppel when a party against whom the doctrine is asserted previously had his day in court and was permitted to fully litigate the specific issue sought to be raised in a later action.' " *Carpenter v. Long*, 196 Ohio App.3d 376, 2011-Ohio-5414, 963 N.E.2d 857, ¶ 39 (2d Dist.), quoting *Hoover v. Transcontinental Ins. Co.*, 2d Dist. Greene No. 2003-CA-46, 2004-Ohio-72, ¶ 17.

{¶ 33} However, we need not resort to non-mutual defensive collateral estoppel, because State Farm would have been in privity with Norman, who was its named insured,

and with whom State Farm had a contractual relationship. *See Howell v. Richardson*, 45 Ohio St.3d 365, 367, 544 N.E.2d 878 (1989), *construed in Gehm v. Timberline Post & Frame*, 112 Ohio St.3d 514, 2007-Ohio-607, 861 N.E.2d 519; *Haimbaugh v. Grange Mut. Cas. Co.*, 10th Dist. Franklin No. 07AP-676, 2008-Ohio-4001, ¶ 21 (insurer is in privity with insured).[4]

{¶ 34} Concerning the requirement of similarity of issues, *Fort Frye Teachers Assn.* noted that two issues are the same for purposes of collateral estoppel where "the same evidence would sustain both issues * * *." *Id.*, citing *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943), paragraph four of the syllabus.[5] Accordingly, the

---

[4] In *Howell*, the Supreme Court of Ohio held that collateral estoppel may be applied against an insurer where the insurer fails to intervene in a tort action. *Howell*, 45 Ohio St.3d at 367, 544 N.E.2d 878. R.C. 3929.06(C)(1), which was enacted in 1999, does indicate that insurers may assert coverage defenses that they have against policy holders when they respond to proceedings brought by judgment creditors. This does not mean that insurers, therefore, cannot be collaterally estopped from litigating certain facts or issues where they have failed to attempt to intervene in the tort proceedings. In 2009, the Supreme Court of Ohio construed *Howell* to indicate that "[w]hen a party has sought and been denied intervention, collateral estoppel will not prohibit future litigation of similar issues." *Gehm v. Timberline Post & Frame*, 112 Ohio St.3d 514, 2007-Ohio-607, 861 N.E.2d 519, ¶ 31 (rejecting insurer's argument that denial of its motion to intervene should have been a final appealable order since, in the insurer's opinion, the decision in *Howell* "would collaterally estop any future litigation in [the insurer's] declaratory judgment action" to determine coverage rights under the policy.) *Id.* at ¶ 30. In both *Howell and Gehm*, collateral estoppel was asserted against the insurer. *See also Taylor v. Covey*, 5th Dist. Stark No. 2002CA00201, 2002-Ohio-7221, ¶ 38, noting that after the 1999 addition of subsections (C)(1) and (2) to R.C. 3929.06, "the right to assert an affirmative defense against the judgment creditor as to any coverage defenses it has against the policy holder still are present. However, this does not extend to re-litigating the facts which are the predicate as to the underlying judgment as [the insurer] had the obligation to defend or defend under a reservation of rights and chose, instead, to abandon its policy holder and its ability to possibly protect itself."

[5] *Grava* overruled paragraph two of the syllabus and modified paragraph one of the syllabus in *Norwood*. *See Grava*, 73 Ohio St.3d 379, 653 N.E.2d 226, at syllabus. These changes do not relate to paragraph four of the syllabus in *Norwood*.

focus should be whether the same evidence or facts would sustain findings on "scope of consent" under the policy and "permission or authority" for purposes of negligent entrustment.

{¶ 35} As an initial matter, we agree with the trial court that permission can be either express or implied. *See, e.g.*, *Erie Ins. Group v. Fisher*, 15 Ohio St.3d 380, 383, 474 N.E.2d 320 (1984). However, in Ohio, where an express prohibition against delegation exists, "there could be no implied authority to delegate." (Citation omitted.) *Sec. Mut. Cas. Co. v. Hoff*, 54 Ohio St.2d 426, 429, 377 N.E.2d 509, (1978). In *Hicks I,* the court found that there was an express prohibition from Norman against delegation. Thus, there would have been no issue of implied permission; Danny, Jr., was the only person who was allowed to drive the car and he had no authority to delegate permission.

{¶ 36} Exceptions can exist where it is shown that the named insured knows of driving by the second permittee and remains silent. *Hoff* at 429. In this situation, consent may be implied. *Id. Accord Jackman v. Cincinnati Ins. Co.*, 41 Ohio App.3d 149, 152, 534 N.E.2d 955 (1st Dist.1987). To the extent that implied permission could have been relevant in *Hicks I*, it was necessarily excluded, based on the court's findings that Hicks had never communicated with Norman, that Hicks did not know why Crackle was driving the car, and that Norman did not entrust the car to Crackle.

{¶ 37} Furthermore, the fact that permission might be implied in a particular case does not mean that the same evidence could not apply to a decision on both negligent entrustment and scope of permission. The Supreme Court of Ohio has rejected a " 'liberal' or 'initial permission rule' for determining whether the use of a vehicle is within the scope of the permission granted." *Fisher,* 15 Ohio St.3d at 383, 474 N.E.2d 320.

"The [liberal] rule provides that when an owner of a motor vehicle initially consents to its use by a permittee, subsequent use by the permittee, short of conversion or theft, remains permissive, notwithstanding that the use exceeded limitations included in the initial grant of permission." (Citation omitted.) *Id.*

{¶ 38} Instead of adopting the liberal rule, the Supreme Court of Ohio has consistently held that " 'where the use of the property deviates only slightly from the purpose for which permission was initially granted, the standard omnibus clause in a liability insurance policy will be interpreted to extend coverage. However, if the use represents a complete departure or gross deviation from the scope of permission, no coverage will be afforded.' " *Fisher* at 383, quoting *Frankenmuth Mut. Ins. Co. v. Selz*, 6 Ohio St.3d 169, 171, 451 N.E.2d 1203 (1983).

{¶ 39} In *Hicks I*, the trial court noted that Norman rented the car so that his son, Danny Jr., could use it. Norman did not give anyone other than his son permission to use the car. Doc. #11, Ex. A, pp. 1-2. Both Norman and Danny, Jr. agreed that Norman gave permission to drive the car only to Danny, Jr. *Id.* at p. 5. As noted, Hicks also testified that he had no communication or contact with Norman before the accident, and had no idea why Crackle was driving at the time of the accident. *Id.* Collateral estoppel precludes litigation of these facts. Furthermore, the State Farm policy restricted the ability to give permission to the named insured or his or her spouse, and Danny, Jr., thus, could not legally have given permission to another to use the car.

{¶ 40} It is clear that, under applicable authority, the "scope of consent" was that Danny was the only person permitted to drive the car, and that Danny, Jr. did not have authority to let anyone else drive the car. When Danny, Jr. allowed Crackle to drive the

car, it was a complete departure and gross deviation from the scope of permission. These facts were decided in the prior action, and indicate lack of negligent entrustment as well as gross departure from the scope of consent under the State Farm policy.

{¶ 41} In *Dillard v. Indiana Ins. Co.*, 2d Dist. Montgomery No. 17401, 1999 WL 961162, *4 (July 2, 1999), we rejected a "second" permittee's contention that coverage under an insurance policy existed because the "first" permittee had implied permission to allow the second permittee to drive a vehicle. As was noted, a "second permittee" situation involves the same legal issues as the "downstream entrustment" theory that was asserted and rejected in *Hicks I*.

{¶ 42} In *Dillard*, we rejected the coverage claim for several reasons. First, the insurance policy limited the ability to give permission to the "named insured." However, the first permittee was not the named insured, and "was not a person who could give permission under the policy." *Id.* at *5. In the case before us, the policy contains the same restriction, and Danny Jr., the first permittee, was not the named insured and could not give permission to anyone else to drive the car.

{¶ 43} We also stressed in *Dillard* that the undisputed facts did not indicate any acts by the named insured "acquiescing in or ratifying * * * [the] delegation to a second permittee." *Id.* Again, there was no evidence in *Hicks I* indicating that the named insured, Norman, acquiesced in or ratified Danny Jr.'s delegation to Crackle. Since Hicks was attempting to hold Norman liable for the injuries, there is no reason why Hicks would not have asserted such facts.

{¶ 44} As was noted, Hicks argues that the trial court erred in finding that he was barred from litigating the implied consent issue because Hicks "could" have done so in

the previous action. Hicks contends the court's statement is inconsistent with existing law on collateral estoppel, which applies only to issues that were litigated, not those that could have been litigated. In this regard, Hicks stresses that he had no reason to argue implied consent in the prior action and no reason to conduct discovery on that point.

**{¶ 45}** We do agree with the general proposition that collateral estoppel applies to points that were decided rather than those that could have been decided. However, we disagree that this prevents collateral estoppel from being applied, or from precluding judgment against Hicks, in the case before us. Specifically, collateral estopped applies not only to issues that were decided, but also to "a *fact* or a point that was actually and directly at issue in a previous action * * *." (Emphasis added.) *Fort Frye Teachers Assn.,* 81 Ohio St.3d at 395, 692 N.E.2d 140. *See also Hicks v. De La Cruz,* 52 Ohio St.2d 71, 74, 369 N.E.2d 776 (1977) (a determination is conclusive in a later action between parties, where "an issue of fact or law actually is litigated and determined by a valid and final judgment * * *.")

**{¶ 46}** As was noted, the facts that were decided in *Hicks I* (during which Hicks would have had an opportunity to discover and argue any facts he wished), cannot be re-litigated, and preclude any finding of coverage under the insurance policy. We, therefore, agree with the trial court that State Farm is entitled to judgment in its favor, even though our decision is based on slightly different reasoning. *See, e.g., State v. Ellington,* 2d Dist. Montgomery No. 17405, 1999 WL 301482, *2 (May 14, 1999) (appellate court "may affirm a correct judgment for reasons different from those upon which the trial court based its decision"); *Radatz v. Fed. Natl. Mtge. Assn.,* 145 Ohio St.3d 475, 2016-Ohio-1137, 50 N.E.3d 527, ¶ 1 (affirming for different reasons than those stated by

appellate court). Specifically, we conclude that the facts established in *Hicks I* preclude Hicks from entitlement to coverage under the terms of the policy.

**{¶ 47}** Hicks concedes that Norman only gave his son permission to use the car and did not give permission to anyone else. According to Hicks, this did not necessarily mean that another person's operation of the car would violate the conditions of the entrustment. In this vein, Hicks lists a situation where Danny, Jr. would be "unable to drive." Hicks then states his intent to show that Danny, Jr., was under a driving suspension at the time of the entrustment, which would give rise to a "reasonable interpretation" that others would drive the car while Danny, Jr. was under suspension.

**{¶ 48}** These points were already raised and rejected in *Hicks I.* In this regard, the trial court in *Hicks I* noted and rejected Hicks' contention that Danny, Jr. was under a license suspension at the time of the entrustment. The court also rejected Hicks' contention that "because Mr. Norman instructed Danny that nobody else should be allowed to drive the vehicle, Mr. Norman must have 'expected an unlicensed driver to be [driving it].' " Doc. #11, Ex. A, p. 7. The court dismissed the first point as unsupported by the evidence, and rejected the second as "a speculative rather than a reasonable inference." *Id.* Thus, while we disagree with the trial court's statement that collateral estoppel applies to issues that "could" have been decided, the trial court did consider these facts in the original case, and did reach the correct result. The facts decided in the prior action demonstrate that Hicks is not entitled to coverage under the State Farm policy.

**{¶ 49}** In arguing that the issues are necessarily different for purposes of collateral estoppel, Hicks relies on two cases. The first is *Rogers*, 10 Ohio App.3d 139, 460 N.E.2d 1149. In *Rogers*, the trial court granted summary judgment for the owner of a car who

had been sued for negligent entrustment. *Id.* at 140. The owner had entrusted her car to her daughter, and did not discuss the car's use by the daughter's husband. *Id.* The owner knew her son-in-law had a drinking problem, and had allowed him to use her car on prior occasions, but there was no evidence that he had operated her car while under the influence of alcohol. *Id.* at 140-141. Both the daughter and son-in-law were licensed drivers, and the owner knew they had two cars, although one was in the repair shop at the time. *Id.* The issue before the court was "whether a trier of fact could find from this evidence that it was negligent for [the owner] to entrust the automobile to her daughter without specifically telling her daughter not to entrust the automobile to her husband, because her husband might operate the automobile while under the influence of alcohol." *Id.* at 141.

{¶ 50} The court of appeals affirmed the summary judgment awarded to the car owner. Specifically, the court concluded that the car owner's original entrustment was not negligent, and that "[I]t would be unreasonable and speculative to charge [the owner] with negligent entrustment because of the possibility that her daughter, the entrustee, might allow her husband to use the automobile for a nonfamily purpose, but to go out and become intoxicated, causing an accident. With no past history of misuse or negligent entrustment of [the owner's] car by either [the daughter or son-in-law], there were insufficient facts to find negligent entrustment without an unwarranted expansion of the doctrine." *Id.*

{¶ 51} After concluding that the grant of summary judgment to the car owner was appropriate, the court stated, in dicta, that "[p]arenthetically, it is noted that the question of the application of [the owner's] liability insurance to [the driver] is a different issue than

the issue of [the owner's] personal liability for negligence." *Id.* at 142.

**{¶ 52}** We find the latter comment irrelevant for several reasons. As an initial matter, the opinion in *Rogers* did not discuss the policy's content. The court's remarks were also unnecessary for resolution of any issues in the case. Dicta in one case has no binding effect in other cases. *See, e.g., Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio St.3d 281, 284, 638 N.E.2d 991 (1994); *LaSalle Bank Natl. Assn. v. Brown*, 2014-Ohio-3261, 17 N.E.3d 81, ¶ 50-51 (2d Dist.). "Dicta includes statements made by a court in an opinion that are not necessary for the resolution of the issues. * * * Dicta is not authoritative, and, by definition, cannot be the binding law of the case." (Footnotes and citations omitted.). *Gissiner v. Cincinnati*, 1st Dist. Hamilton No. C-070536, 2008-Ohio-3161, ¶ 15.

**{¶ 53}** Moreover, no further case history is reported in *Rogers*, and there is no indication about what might have been decided about the application of collateral estoppel in a subsequent action. And finally, the facts in the two cases are different. Unlike the case before us, there was no express restriction of permission in *Rogers*; the relevant issue was whether the owner was negligent because she knew of her son-in-law's drinking problem and failed to restrict permission. *Rogers*, 10 Ohio App.3d at 141, 460 N.E.2d 1149.

**{¶ 54}** The second case that Hicks cites is *Bish v. Pritchard*, 10th Dist. Franklin No. 85AP-898, 1986 WL 6894 (June 19, 1988). In *Bish*, a car owner had pulled over to help another driver, and the owner's passenger then moved into the driver's seat, drove the car up the road, and came back. In the course of doing so, he hit and injured another party. *Id.* at *1. Subsequently, two actions were brought: a tort action against the

owner, the driver, and others; and a declaratory judgment action by the insurer, to determine coverage. *Id.*

{¶ 55} The declaratory judgment action was decided first, and in the tort action, the court granted summary judgment to the owner, stating that the issue of whether the owner gave permission and consent had been decided in the declaratory judgment action. *Id.* On appeal, the plaintiff in the tort action argued that he should not be collaterally estopped from litigating the tort action due to the prior holding in the insurance case. *Id.* at *2. In this vein, the plaintiff argued that "the issue of permission in a negligent entrustment case is totally separate and different than the issue of 'consent' in an insurance contract case." *Id.*

{¶ 56} After citing its prior decision in *Rogers*, the court stated that "[l]iability based on a negligent entrustment theory is predicated upon the combined negligence of the owner and driver; the owner's negligence arising from the act of knowingly entrusting the vehicle to an incompetent driver, and the latter's negligence from the lack of due care in its operation." (Citation omitted.) *Id.* The court further noted that "[o]ne of the elements which necessarily must be proved in a negligent entrustment action is that the owner entrusted the motor vehicle, '* * * with permission to operate the same, to one whose incompetency, inexperience or recklessness is known or should have been known by the owner.' " *Id.*, quoting *Williamson*, 145 Ohio St. 467, 62 N.E.2d 339, at paragraph two of the syllabus. The court then said "[n]evertheless, the element of permission may be implied. This court in *Alston v. Hunsberger* (March 17, 1970), No. 9514, unreported (1970 Opinions 525, 528), defined implied permission as '* * * a sufferance of use or a passive permission deduced from a failure to object to a known past, present or intended

future use under circumstances where the use should be anticipanted [sic].' " *Id.*

{¶ 57} Noting that a copy of the insurance policy was not in the record, the court said it could not decide if scope of consent was defined in the policy. *Bish*, 10th Dist. Franklin No. 85AP-898, 1986 WL 6894, at *3. In addition, the court noted that it could not decide on the record before it whether the declaratory judgment case had litigated the issue of implied consent. *Id.* The court also commented that "[u]nder Ohio's deviation rule, * * * [i]f [the owner] entrusted the vehicle to [the driver] to operate for a limited purpose such as to move the vehicle, [the owner] could be liable for [the driver's] deviation from the scope of permission and driving off resulting in the accident * * * provided [the owner] were negligent in entrusting the vehicle to [the driver] to operate for such limited purpose." *Id.* As a result, the court remanded the case for a decision on whether the driver had "passive permission" to drive the vehicle. *Id.* at *2.

{¶ 58} *Bish* did not involve a second permittee situation; instead, the owner clearly gave the driver permission to move the car. Furthermore, the opinion does not even indicate whether the tort plaintiff was part of the declaratory judgment action. Instead, the court referred only to the fact that the insurer brought the declaratory judgment action against its own insured, the owner of the car. *Bish* at *3.

{¶ 59} In contrast to *Bish*, the case before us involves an explicit restriction of who was allowed to drive the car. As we stressed, where an express prohibition against delegation exists, "there can be no implied authority to delegate." (Citation omitted.) *Hoff*, 54 Ohio St.2d at 429, 377 N.E.2d 509, 511. *Bish* and the current case, therefore, involve different facts and considerations.

{¶ 60} Furthermore, *Bish* presents a situation that is procedurally opposite to the

case before us. Specifically, the insurer in *Bish* was attempting to assert declaratory judgment findings against an injured party, and the declaratory judgment action was final before the injured party's action was decided.

{¶ 61} In *Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St.3d 138, 2010-Ohio-3264, 931 N.E.2d 548, the Supreme Court of Ohio stated that:

> In this case, we are asked to determine whether a declaratory judgment obtained in an action initiated by an insurer, holding that the insurer has no duty to indemnify its insured for injuries caused to a third party, is binding upon that third party in a separate action brought against the insurer pursuant to R.C. 3929.06. We hold that the declaratory judgment between the insured and insurer is binding upon the plaintiff in an R.C. 3929.06 action only if the declaratory judgment action was initiated by the insured or if the plaintiff participated in the declaratory judgment action.

*Id.* at ¶ 1.

{¶ 62} This is consistent with *Bish,* which did not indicate whether the injured third party had participated in the declaratory judgment action that the insurer brought. In contrast, the injured party, Hicks, had an opportunity to fully litigate his case, and later filed an action against the insurer. Accordingly, the circumstances are quite different.

{¶ 63} The "deviation rule" discussed in *Bish* is also another name for the "scope of permission rule" that we previously discussed. As we stated, Ohio has rejected a liberal rule, and has said that " 'where the use of the property deviates only slightly from the purpose for which permission was initially granted, the standard omnibus clause in a liability insurance policy will be interpreted to extend coverage. However, if the use

represents a complete departure or gross deviation from the scope of permission, no coverage will be afforded.' " *Fisher*, 15 Ohio St.3d at 383, 474 N.E.2d 320, quoting *Selz*, 6 Ohio St.3d at 171, 451 N.E.2d 1203.

{¶ 64} Under the facts found in the prior action, Danny Jr. was not permitted to delegate permission to drive the car to a second permittee, and his delegation was a complete departure from the scope of permission. There was simply no passive permission or failure to object after knowing of past or anticipated uses. More importantly, Hicks raised this point in the prior action, and the trial court rejected it.

{¶ 65} Accordingly, we conclude that the trial court did not err in applying collateral estoppel to the facts underlying Hicks' claim for coverage under the State Farm policy of insurance. The inability to re-litigate those facts means that Hicks was precluded from obtaining coverage, because Crackle did not qualify as an insured under the policy. Hicks' sole assignment of error, therefore, is overruled.


IV.   Issue of Whether a Final Judgment Existed in *Hicks I*

{¶ 66} Although we have concluded that the trial court's judgment should be affirmed, the dissent has raised an issue concerning whether the requirements for collateral estoppel have been established. As was noted, in issue preclusion, "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." (Citations omitted.) *Fort Frye Teachers Assn.*, 81 Ohio St.3d at 395, 692 N.E.2d 140.

{¶ 67} According to the dissent, State Farm failed to meet its burden of showing that there was a final judgment in *Hicks I*. In taking this position, the dissent notes that while three defendants (Crackle, Norman, and Abbott) were named in *Hicks I,* the October 20, 2015 summary judgment ruling involved only Hicks' negligent entrustment claim against Norman. Because the trial court did not attach a Civ.R. 54(B) certification to its summary judgment decision, the dissent contends that the decision was interlocutory, rather than being a final judgment.

{¶ 68} The dissent also contends that we are restricted to the record before the trial court in *Hicks II*, which did not establish whether the interlocutory order became final. As a result, there would be no final judgment to which collateral estoppel could attach. Based on this reasoning, the dissent states that we should reverse the trial court's decision and remand the case for further proceedings.

{¶ 69} After oral argument (where the final judgment issue was discussed), Hicks filed a notice with our court, indicating that he had filed a dismissal pursuant to Civ.R. 41(A)(1)(a) of all claims against the remaining defendants in *Hicks I*. Despite this fact, the dissent concludes that we should take no position on whether the court entered a final judgment in *Hicks I*.

{¶ 70} We very respectfully disagree with the reasoning of the dissent. As an initial point, the parties waived any issue concerning whether the trial court had entered a final judgment in *Hicks I,* because they failed to raise it in the trial court. As a general matter, "[a]n appellate court will not consider any error which a party complaining of a trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." (Citations

omitted.)  *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 123, 512 N.E.2d 640 (1987).

{¶ 71} Furthermore, even if we considered the issue under the plain error doctrine, the doctrine "provides for the correction of errors clearly apparent on their face and prejudicial to the complaining party even though the complaining party failed to object to the error at trial."  (Citations omitted.)  *Id.*  In the case before us, no error is apparent on the face of the record.   Furthermore, since the parties failed to raise any such alleged error in their appellate briefs, there is no complaining party.

{¶ 72} Whether Case No. 2014-CV-1964 resulted in a final judgment was a question we raised at oral argument only after our review of the same public on-line docket.   Thereafter, as reflected by a notice Hicks filed in our docket on May 4, 2017, Hicks, on May 2, 2017, voluntarily dismissed remaining claims against other parties in Case No. 2014-CV-1964.   At this juncture, there should be no question that the underlying judgment is final.   Case No. 2014-CV-1964 is not the case on appeal and there is nothing to prohibit Hicks from taking action in that case while this case, No. 2016-CV-462, is on appeal.   Even if there is uncertainty whether Case No. 2014-CV-1964 is now a final judgment, Hicks' recent filing effectively forfeits his ability to assert that the prior judgment is anything but final.

{¶ 73} Even if we were to assume, as the dissent does, that the judgment in *Hicks I* was not final, Hicks would then have been precluded from suing State Farm. Specifically, R.C. 3929.06 limits the ability of persons other than policy holders to sue insurers.   In this regard, the statute provides that:

> (A)(1) If a court in a civil action enters a final judgment that awards

damages to a plaintiff for injury, death, or loss to the person or property of the plaintiff or another person for whom the plaintiff is a legal representative and if, at the time that the cause of action accrued against the judgment debtor, the judgment debtor was insured against liability for that injury, death, or loss, the plaintiff or the plaintiff's successor in interest is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment.

(2) If, within thirty days after the entry of the final judgment referred to in division (A)(1) of this section, the insurer that issued the policy of liability insurance has not paid the judgment creditor an amount equal to the remaining limit of liability coverage provided in that policy, the judgment creditor may file in the court that entered the final judgment a supplemental complaint against the insurer seeking the entry of a judgment ordering the insurer to pay the judgment creditor the requisite amount.  Subject to division (C) of this section, the civil action based on the supplemental complaint shall proceed against the insurer in the same manner as the original civil action against the judgment debtor.

(B) Division (A)(2) of this section does not authorize the commencement of a civil action against an insurer until a court enters the final judgment described in division (A)(1) of this section in the distinct civil action for damages between the plaintiff and an insured tortfeasor and until the expiration of the thirty-day period referred to in division (A)(2) of this

section.

(C)(1) In a civil action that a judgment creditor commences in accordance with divisions (A)(2) and (B) of this section against an insurer that issued a particular policy of liability insurance, the insurer has and may assert as an affirmative defense against the judgment creditor any coverage defenses that the insurer possesses and could assert against the holder of the policy in a declaratory judgment action or proceeding under Chapter 2721. of the Revised Code between the holder and the insurer.

(2) If, prior to the judgment creditor's commencement of the civil action against the insurer in accordance with divisions (A)(2) and (B) of this section, the holder of the policy commences a declaratory judgment action or proceeding under Chapter 2721. of the Revised Code against the insurer for a determination as to whether the policy's coverage provisions extend to the injury, death, or loss to person or property underlying the judgment creditor's judgment, and if the court involved in that action or proceeding enters a final judgment with respect to the policy's coverage or noncoverage of that injury, death, or loss, that final judgment shall be deemed to have binding legal effect upon the judgment creditor for purposes of the judgment creditor's civil action against the insurer under divisions (A)(2) and (B) of this section.  This division shall apply notwithstanding any contrary common law principles of res judicata or adjunct principles of collateral estoppel.

{¶ 74} Based on this statue, and as pertinent here, insurers may be sued in only

two situations: (1) by plaintiffs after judgment is rendered in their favor and the insurer fails to pay the amount of the judgment, up to the insurer's limit of liability, within 30 days; and (2) by the policy holder, who may file a declaratory judgment action prior to the time that the plaintiffs (now judgment creditors) commence a supplemental complaint after receiving judgment.

{¶ 75} In the first situation, the plaintiff (now the judgment creditor) files a supplemental complaint against the insurer. In the second situation, the policy holder files a declaratory judgment action, seeking a decision on whether liability coverage exists. In addition, an insurer always has the ability to bring a declaratory judgment against its named insured or persons claiming coverage, in order to establish whether coverage exists under an insurance policy. *See, e.g., Emp. Ins. of Wausau v. Amcast Indus. Corp.*, 126 Ohio App.3d 124, 126, 709 N.E.2d 932 (2d Dist.1998) (declaratory judgment actions brought by insurers for determination of whether they owed coverage for losses from pollution).

{¶ 76} "Together, R.C. 2721.02, 2721.12, and 3929.06 establish the rules for insurance-coverage declaratory judgment actions involving injured parties, tortfeasors, and tortfeasors' insurers. Those statutes set forth who may bring an action, when it may be brought, and what effect prior judgments between a tortfeasor and his or her insurer have on plaintiffs." *Heintzelman,* 126 Ohio St.3d 138, 2010-Ohio-3264, 931 N.E.2d 548, ¶ 10.

{¶ 77} As an example, the Supreme Court of Ohio has precluded an injured party's assignee from filing a direct action against an insurer where the injured party had not yet met the terms of R.C. 3929.06 (obtaining judgment) when the assignment was made.

The court reasoned that the assignee had no greater rights than those of the injured party, who would not have a direct action until after she obtained judgment against the tortfeasor. *W. Broad Chiropractic v. Am. Family Ins.*, 122 Ohio St.3d 497, 2009-Ohio-3506, 912 N.E.2d 1093, ¶ 34. *Accord Pike Therapy Ctr. v. Allstate Ins. Co.*, 2d Dist. Montgomery No. 23074, 2009-Ohio-4330, ¶ 10 (affirming summary judgment in insurer's favor on assignee's claims, where the injured party had not obtained judgment against the tortfeasor).

{¶ 78} In *Heintzelman*, the court also concluded that R.C. 3929.06 is unambiguous. *Heintzelman* at ¶ 17. Consequently, under *Heintzelman*, if the judgment in Hicks' favor was not final, Hicks did not have the right to bring an action against State Farm.[6] Under this reasoning, if we take notice that there was not a final judgment in the underlying case, we should also take notice that when filed, the entire current case was a prohibited direct action subject to being dismissed upon remand.

{¶ 79} Furthermore, Hicks could have avoided any issue in this regard by filing a supplemental complaint in the original action. R.C. 3929.06(A)(2) refers to the filing of a "supplemental complaint." "A supplemental pleading * * * is designed to cover matters subsequently occurring but pertaining to the original cause. * * * Moreover, the staff notes to Civ.R. 15(E) provide that 'fundamentally, a supplemental pleading is a mere addition to, or continuation of, the original complaint.' " (Citation omitted.) *Mork v. Waltco Truck Equip. Co.*, 70 Ohio App.3d 458, 461, 591 N.E.2d 379 (9th Dist.1990). *Accord Gilson v.*

---

[6] State Farm's contention in the trial court that Hicks lacked standing to bring the action had nothing to do with whether the judgment in the prior action was final. It was based on State Farm's position that Hicks was not an "insured" under its policy because he was not a "particular insured" or a third-party beneficiary. As noted, the trial court did not decide any matters other than the collateral estoppel issue.

*Windows & Doors Showcase, L.L.C.*, 6th Dist. Fulton Nos. F-05-017, F-05-024, 2006-Ohio-2921, ¶ 25 ("[a] supplemental pleading merely adds to or continues the original complaint.")

{¶ 80} Filing a supplemental complaint in the tort action, rather than initiating a separate action was the process followed in *Heintzelman*, as the lower court decisions (one granting judgment against the tortfeasors, and the other resolving the supplemental complaint of the injured parties, who had obtained judgment against the tortfeasors) both bore the same trial court case number. *See Heintzelman v. Air Experts, Inc.*, 5th Dist. Delaware No. 2005-CAPE-08-0054, 2006-Ohio-4832, and *Estate of Heintzelman v. Air Experts, Inc.*, 5th Dist. Delaware No. 07CAE090045, 2008-Ohio-4883. However, instead of taking this route, Hicks chose to file a separate action.

{¶ 81} We have previously said the use of the word "may" in R.C. 3929.06(A)(1) " 'indicates that a judgment creditor is merely permitted – not mandated – to file its action in the same court pronouncing judgment.' " *R&M Materials Handling, Inc. v. Cincinnati Ins. Co.*, 2d Dist. Champaign No. 2013-CA-40, 2014-Ohio-949, ¶ 13, quoting *Benahmed v. Houston Cas. Co.*, 486 Fed.Appx. 508, 513 (6th Cir.2012).

{¶ 82} *Benahmed* was a diversity action in federal court, and it may have made sense to file in federal court in that case, after a judgment was obtained in state court. There seems to be little logical reason why a separate action would have been filed in the case before us, particularly since the statute refers to a "supplemental complaint," not to a separate action. In any event, had Hicks done so, there would have been no question regarding the existence of a final judgment.

{¶ 83} In light of the preceding discussion, we very respectfully disagree with the

position of the dissent. We also find no reversible error in the trial court's judgment, and will affirm the judgment based on the reasoning set forth in this opinion.

### III. Conclusion

{¶ 84} Hicks' sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J., concurs.

FROELICH, J., dissenting:

{¶ 85} I dissent and would hold that the trial court erred in rendering summary judgment to State Farm, because State Farm failed to meet its burden to establish that res judicata applied.

{¶ 86} As noted by the majority, the standard for reviewing a summary judgment ruling is well established, and it need not be repeated here. However, I emphasize that the moving party, in this case, State Farm, had an "initial burden" of affirmatively demonstrating that no genuine issue of material fact remained to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

{¶ 87} An appellate court reviews a trial court's grant of summary judgment de novo. In doing so, the appellate court "is limited to the trial court record as it existed at the time the trial court rendered judgment." *PNC Banks, N.A. v. Weaver*, 2d Dist. Montgomery No. 25627, 2013-Ohio-2765, ¶ 12.

{¶ 88} In support of its motion for summary judgment, State Farm attached a copy of the October 20, 2015 "Decision, Order and Entry Sustaining the Motion of Defendant,

Danny Norman, for Summary Judgment" in *Hicks I*. The trial court in this case also had before it certain agreed-upon facts, as well as the State Farm policy attached to Hicks' complaint, which State Farm agreed, in its Answer, was a true and accurate copy of the policy and endorsements issued by State Farm. (State Farm's Answer did not agree to the authenticity of the car rental documents also attached to Hicks' complaint. Accordingly, those documents did not constitute Civ.R. 56 evidence.) No additional portions of the record in *Hicks I* were provided.

{¶ 89} The parties do not dispute, and the summary judgment decision in Hicks I substantiates, that *Hicks I* involved three defendants – Roy Crackle III, Danny Norman, Sr., and Larry Abbott. However, the October 20 summary judgment ruling in *Hicks I* concerned only Hicks' negligent entrustment claim against Norman, and the trial court did not certify that ruling as a final appealable order, pursuant to Civ.R. 54(B). "[A]n order that neither disposes of all claims between the parties nor contains an express determination that there is no just reason for delay is an interlocutory order. * * * When an order of a trial court is interlocutory, the order remains subject to revision or modification by the trial court until and unless the order is certified as suitable for appeal, or the action is finally terminated as to all claims and all parties. Once a final judgment is issued terminating a case, all interlocutory orders are merged into the final judgment." (Citations omitted.) *Lingo v. Ohio Cent. RR. v. Norfolk S. Ry.*, 10th Dist. Franklin No. 05-AP-206, 2006-Ohio-2268, ¶ 17. *See Dibert v. Carpenter*, 2017-Ohio-689, __ N.E.3d __, ¶ 49 (2d Dist.) (quoting *Lingo*).

{¶ 90} Given the limited record before us, I state no opinion as to whether the *Hicks I* summary judgment ruling was, in fact, a final appealable order. To make such a

determination would require a review of the record in *Hicks I*, which is not before us and was not properly before the trial court when it made the decision under review. Rather, I conclude that the Civ.R. 56 evidence before the trial court did not establish that a valid final judgment was entered in *Hicks I*. Again, the October 20 summary judgment ruling in *Hicks I* was, on its face, interlocutory, and State Farm provided no additional evidence to establish that a valid final judgment was subsequently entered by the time the trial court issued the judgment now on appeal.

**{¶ 91}** Based on the record before us, State Farm did not establish that the summary judgment ruling in favor of Norman in *Hicks I* constituted a valid final judgment for purposes of res judicata. Accordingly, I would reverse the trial court's judgment and remand for further proceedings.

. . . . . . . . . . . .

Copies mailed to:

Douglas D. Brannon
Kevin A. Bowman
Nicholas E. Subashi
Anne P. Keeton
Hon. Erik R. Blaine